LAMP, INCORPORATED, Plaintiff, v. INTERNATIONAL FIDELITY IN-SURANCE COMPANY *et al.*, Defendants (International Fidelity Insurance Company, Counterplaintiff-Appellant, v. Jerry Vik *et al.*, d/b/a Quality Control Masonry of Northern Illinois, Counterdefendants-Appellees; Quality Control Masonry of Northern Illinois *et al.*, Third-Party Plaintiffs, v. Paul Magierek, Third-Party Defendant).

Second District   No. 2—85—0400

Opinion filed May 16, 1986.

Brady, McQueen, Martin, Collins & Jensen, of Elgin, and Gregory A. Friedman and Lee Ann Russo, both of Coffield, Ungaretti, Harris & Slavin, of Chicago, for appellant.

Donald Rose and Kathleen Ross, both of Rose & Ross, Ltd., of Rolling Meadows, for appellees.

JUSTICE STROUSE delivered the opinion of the court:

Plaintiff, Lamp Incorporated (Lamp), brought this action alleging that defendants, Jerry Vik and Louis Champa, d/b/a Quality Control Masonry of Northern Illinois (herein collectively referred to as Quality Control), breached a subcontract agreement with Lamp and that defendant International Fidelity Insurance Company (IFIC), surety for Quality Control, also was liable for damages resulting from the alleged breach. IFIC counterclaimed against Quality Control for indemnity including attorney fees and costs pursuant to an agreement entered into between them.

The relevant facts to this appeal reveal the following. Quality Control entered into a standard subcontract agreement with Lamp pursuant to which it agreed to perform certain masonry work on a building project for which Lamp was general contractor. Pursuant to its agreement with Lamp, Quality Control obtained from IFIC a performance bond and a labor and material payment bond under the terms of which IFIC agreed to act as surety. Coincident with the procurance of these bonds, Quality Control entered into an indemnity agreement with IFIC in which it agreed to indemnify IFIC "from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and counsel fees) and from and against any and all such losses and/or expenses which the surety [IFIC] may sustain and incur: (1) by reason of having executed or procured execution of the Bonds."

Lamp instituted this action against Quality Control for breach of the subcontract agreement alleging that it did not meet the material specifications in their agreement. Lamp's complaint also alleged that IFIC was liable for damages from this breach as the surety under the performance bond. Lamp amended its complaint to assert additional breach of contract claims against Quality Control for failure to pay a supplier for materials used to complete the subcontractor's work and against IFIC as surety under the labor and material payment bond. IFIC answered the claim and asserted its counterclaim against Quality Control seeking indemnification for all sums expended on behalf of Quality Control pursuant to the bonds "as a result of any breach" of the subcontract agreement. In its prayer for relief, IFIC requested judgment in its favor to the fullest extent of any sums paid to Lamp as a result of bonding Quality Control's performance, plus reasonable attorney fees, costs and additional relief. IFIC did not attach the indem-

nity agreement as an exhibit to its counterclaim. Nor was any reference made in the counterclaim to the indemnity agreement.

A bench trial commenced on June 4, 1984. At trial, both Vik and Champa testified that they had entered into the indemnity agreement with IFIC and identified their signatures which appeared on the agreement. IFIC did not offer any other proof, did not request an evidentiary hearing, or request leave to have a separate hearing on damages during the remainder of the trial.

In the March 12, 1985, order, the trial court entered judgment for defendants, Vik, Champa, Quality Control, and IFIC, on Lamp's claim. The court also held that the issues in IFIC's counterclaim were moot because of its ruling with respect to Lamp's claims.

IFIC filed a motion to modify the judgment to allow IFIC to recover reasonable costs and attorney fees expended in defending Lamp's action. In the alternative, IFIC requested that it not be precluded from seeking recovery of its costs and attorney fees in a separate action. IFIC did not attach an affidavit of costs and fees in its motion. The trial court denied the motion and clarified its earlier order to hold that IFIC had made no proof of liability on the part of Quality Control as to its counterclaim and that it had proferred no evidence at trial as to its damages. It is from these rulings by the trial court that IFIC appeals.

■ IFIC first contends that the trial court erred in finding that IFIC had not established Quality Control's liability to indemnify it for its costs and attorney fees expended in defending Lamp's claims. IFIC contends that given Quality Control's express agreement to indemnify IFIC for its costs and expenses incurred "by reason of having executed or procured the execution of the Bonds," the moment an attempt was made to recover under the bonds, Quality Control's liability to IFIC attached.

The indemnity agreement states, in relevant part:

> "SECOND: The Contractor and Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) *By reason of having executed or procured the execution of the Bonds,* (2) *** or (3) *** Payment by reason of the aforesaid cause shall be made to the Surety by the Contractor and Indemnitors as soon as liability exists or is asserted against the Surety ***." (Emphasis added.)

Although Illinois courts have not construed the particular language at issue here, other courts have interpreted this language to indemnify the surety for all expenses incurred in defending an action as a result of executing the bond. (*Lori-Kay Golf, Inc. v. Lassner* (1984), 61 N.Y.2d 722, 460 N.E.2d 1097; *United States Fidelity & Guaranty Co. v. Hittle* (1903), 121 Iowa 352, 96 N.W. 782.) In *Lori-Kay Golf*, an action was brought against the appellee for wrongful eviction and against United States Fidelity & Guaranty Co. (U.S. Fidelity) as surety on a bond furnished to appellee as receiver of certain real property and U.S. Fidelity cross-claimed for indemnification. The appellate court, in upholding the cross-claim, found the surety's right to indemnity included "the right to reimbursement for legal fees incurred in defending an action brought against the principal even though it may be groundless." (*Lori-Kay Golf, Inc. v. Lassner* (1984), 61 N.Y.2d 722, 723, 460 N. Ed. 2d 1097, 1098.) The appellees had agreed to " 'indemnify and save the Company harmless from any and all liabilities *** counsel fees, and expenses of whatever kind or nature, which it [the surety] shall or may, for any cause, at any time, sustain or incur, or be put to, *by reason or in consequence of its having executed said bond'.*" (Emphasis added.) (61 N.Y.2d 722, 724, 460 N.E.2d 1097, 1098-99.

In *Hittle*, the Iowa Supreme Court in a similar case reversed the trial court's refusal to award the surety expenses it incurred where the principal had agreed to "indemnify and keep indemnified [U.S. Fidelity] from and against any, and all loss, costs, charges, suits, damages, counsel fees and expenses of whatever kind or nature which said company shall or may, for any cause, at any time, sustain or incur or be put to for or *by reason or in consequence of said company having entered into or executed said bond.*" (Emphasis added.) (*United States Fidelity & Guaranty Co. v. Hittle* (1903), 121 Iowa 352, 352-53, 96 N.W. 782.) The court noted that the language was very broad and intended to protect the company from any financial loss arising from its suretyship for the defendant. 121 Iowa 352, 354, 96 N.W. 782, 783.

We hold IFIC's right to indemnification arose immediately upon Lamp's claim regardless of defendant's liability on the underlying claim. See *Schroeder v. Pennsylvania R.R. Co.* (7th Cir. 1968), 397 F.2d 452, 459 (the indemnitor's right to indemnification for its cost and expense was not dependent alone on the rendition of a judgment against it in the main action but also on an *attempt* to hold it liable); *McGreevy v. Bremers* (1980), 205 Neb. 554, 556, 288 N.W.2d 490, 492 (fees, costs and expenses were incurred in consequence of the issuance of the guardian's bond); *United States Fidelity & Guaranty Co. v. Falk* (1943), 214 Minn. 138, 143-44, 7 N.W.2d 398, 401 (action on bond was

contemplated by agreement which provided for indemnification for fees by reason of the surety having executed said bond, not additional fees which arose out of breach of indemnity agreement); *Morgan v. United States Fidelity & Guaranty Co.* (Miss. 1966), 191 So. 2d 917, 924 (indemnity agreement covers attorney fees which surety may incur as a result of suits by reason of procuring the bond); *The Illinois Surety Co. v. Munro* (1919), 289 Ill. 570, 576 (the obligation which defendant guaranteed required him to reimburse plaintiff for damages, counsel fees and expenses of every kind which plaintiff might be required to pay by reason of having executed the bond).

■ We recognize that where an indemnity contract provides that the indemnitor will reimburse the indemnitee for all losses, damages, expenses, costs and attorney fees incurred, the indemnitee is entitled to recover them. (See *Wilson-Jump Co. v. McCarthy-Hundrieser & Associates* (1980), 85 Ill. App. 3d 179, 182.) The indemnitee, however, is still required to establish, by competent evidence, its reasonable fees and costs. This is because the indemnitor is not necessarily liable for the amount the indemnitee unilaterally paid. (85 Ill. App. 3d 179, 182.) Therefore, although liability has been established, IFIC is still required to put forth evidence concerning its reasonable fees and costs. Since this was not established during trial, the question remains whether IFIC could properly offer proof of damages at a post-trial hearing or by way of a later petition for attorney fees and costs.

■ IFIC argues that the trial court's ruling, requiring that IFIC establish proof of its damages at a juncture in the proceedings where all of the expenses comprising such damages had not yet been incurred and when it could not be calculated with any certainty until after the trial's conclusion, is unprecedented. In support, IFIC contends that several decisions have allowed damages for fees and expenses to be introduced either in a post-trial hearing or post-trial petition (*Wilson-Jump Co. v. McCarthy-Hundrieser & Associates* (1980), 85 Ill. App. 3d 179; *Montgomery Ward & Co. v. Wetzel* (1981), 98 Ill. App. 3d 243; *LaSalle National Bank v. Brodsky* (1964), 51 Ill. App. 2d 260).

We are not persuaded by IFIC's argument. Although a trial court may reserve the question of fees and costs for future determination (*National Bank & Trust Co. v. Becker* (1964), 50 Ill. App. 2d 151, 152), in order for a court to reserve ruling, there must obviously be a request. Here, had IFIC wished to reserve the hearing to a later date until fees and costs could be calculated with more certainty, it should have requested such leave before resting. We believe that since attorney fees and costs were the essence of IFIC's counterclaim, proof of the case in chief should not have been deferred to a supplemental pro-

ceeding requested in a post-trial motion. *Stein v. Feldmann* (1980), 85 Ill. App. 3d 973.

We also find the cases cited unpersuasive. Neither *Wilson-Jump* nor *Montgomery* implicitly establish a supplemental proceeding for proving damages where there was no proof of damages established during trial or where there was no request during trial to later prove up damages. Moreover, a trial court may grant judgment for costs where an evidentiary hearing has not been held or requested. This, however, is discretionary with the trial court and absent a manifest abuse, its decision will not be disturbed. *LaSalle National Bank v. Brodsky* (1964), 51 Ill. App. 2d 260, 268.

We find this case more factually consistent with *Stein v. Feldmann* (1980), 85 Ill. App. 3d 973. In that case the plaintiff, an attorney, filed a complaint to recover his fee for representing the defendant in a divorce proceeding. The parties submitted the matter to arbitration, which gave an award to the plaintiff. When defendant failed to pay, plaintiff filed a motion in the trial court for judgment in his favor. Plaintiff also requested additional attorney fees and costs for filing his motion in the trial court pursuant to the arbitration agreement. Judgment was entered for the plaintiff. (85 Ill. App. 3d 973.) Once entered, plaintiff requested a ruling on his motion for attorney fees. (85 Ill. App. 3d 973, 974.) The appellate court found that the trial court did not refuse to grant plaintiff such a hearing. In fact, the record failed to disclose that plaintiff ever specifically requested a hearing. The court stated: "If plaintiff wished to introduce evidence other than that presented in the affidavit, he should have informed the court and demonstrated what the evidence would show. In the absence of any such demonstration, we have no way of determining what the evidence would have been. Since plaintiff failed to request a hearing, he cannot now complain." (85 Ill. App. 3d 973, 974.)

As in *Stein*, IFIC never requested leave during trial to introduce proof at a later date. Moreover, in IFIC's request for a hearing it never submitted an affidavit or demonstrated what the evidence concerning costs and fees would show. In the absence of a request for a hearing before the close of its proofs or proof of what the evidence concerning costs and fees would show, we find no abuse of discretion in the trial court's decision.

In accordance with the views expressed above, the judgment of the circuit court is affirmed.

Affirmed.

HOPF and UNVERZAGT, JJ., concur.