955 F.2d 1107
 23 Fed.R.Serv.3d 1159
 Howard B. CARROLL, Jeannette B. Armstrong, Paul Armstrong,
Mila C. Palmer, Robert J. Eck, Jean A. Pettigrew,
Patricia C. Eck, and Robert A. Eck,
Plaintiffs-Counterdefendants-Appellees,
v.
ACME-CLEVELAND CORPORATION, Defendant-Counterplaintiff-Appellant.
Appeal of George F. KARCH, Jr. and William G. Swindal,
attorneys for Acme-Cleveland Corporation.
 Nos. 90-2392, 90-2330 and 90-2391.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 15, 1991.
Decided Jan. 31, 1992.
Rehearing Denied March 9, 1992.
 
 William G. Swindal, Hinshaw & Culbertson, Chicago, Ill., George F. Karch, Jr. (argued), Thompson, Hine & Flory, Cleveland, Ohio, for defendant-counterplaintiff-appellant.
 Richard F. Zehnle (argued), Edward C. Jepson, Jr., Steven G. Rudolf, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., Gwenda Burkhardt, Deerfield, Ill., for plaintiffs-counterdefendants-appellees.
 Before WOOD, Jr.* , and KANNE, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.
 KANNE, Circuit Judge.
 
 
 1
 After lengthy pre-trial proceedings, the district court entered summary judgment in favor of plaintiffs-appellees Howard B. Carroll and other shareholders ("the shareholders") of Sheldon Machine Co., Inc. ("Sheldon"), and against defendant-appellant Acme-Cleveland Corporation ("Acme"). The district court also imposed Rule 11 sanctions against Acme and its attorneys. Acme, and its attorneys, argue that the district court committed several errors warranting reversal of the judgment and sanctions. We affirm.
 
 
 2
 Sheldon, before its sale to Acme, was a manufacturer of computer controlled lathes and machine tools used in manufacturing. Acme, until it acquired Sheldon, had several subsidiaries involved in the machine tooling industry, but did not sell computer controlled machine tools.
 
 
 3
 In May of 1981, Carroll, President of Sheldon, and Dennis D. Anderson, Vice President and Treasurer of Sheldon, contacted Acme with an offer to sell Sheldon. Acme prepared a draft of the agreement dated July 16, 1981 and sent it to Sheldon's attorney. After further negotiations, on August 14, 1981, pursuant to a stock-purchase agreement with Acme ("Agreement"), the shareholders sold their outstanding shares of Sheldon to Acme for a cash price of $4.3 million.
 
 
 4
 The Agreement, which was principally drafted by Acme, included several representations by the shareholders. The dispute between the parties centers on whether the shareholders failed to comply with one of those representations. In paragraph 1.12 of the Agreement the shareholders represented that:
 
 
 5
 [t]here is no pending or, to the knowledge of any of the [shareholders], threatened claim (including any product liability or warranty claim), litigation, proceeding, order of any court or governmental agency, or governmental investigation or inquiry against Sheldon, or involving any material adverse change in the financial position, business, assets, properties, or operations of Sheldon, or material interference with the sale of products sold by Sheldon, except as fully described in the Litigation List delivered by [the shareholders] to [Acme] (emphasis added).
 
 
 6
 In addition to the representations, the shareholders agreed to indemnify Acme if any representations proved incorrect. Acme retained the right, in certain circumstances, to set off any liability of the shareholders against any payment owed them by Acme. Paragraph 9.2(a) of the Agreement stated that:
 
 
 7
 the [shareholders] owning common stock of Sheldon shall jointly and severally ... indemnify [Acme] in an aggregate amount not to exceed $3,800,000 ... against any loss, cost, liability or expense (including but not limited to costs and expenses of litigation and reasonable attorneys' fees) incurred by [Acme] by reason of the incorrectness or breach of any of the representations, warranties, covenants, and agreements of the [shareholders] contained in this Agreement or given on the Closing Date. To the extent [Acme] incurs loss, cost, liability or expense in excess of $3,800,000 by reason of such incorrectness or breach, [the shareholders] owning preferred stock of Sheldon shall jointly and severally ... indemnify [Acme] against any such loss, cost, liability or expense in an aggregate amount not to exceed $500,000.... [Acme] may, at its option and without waiving any other remedies that may be available to it, satisfy its right of indemnification by setting off the amounts of any such losses, costs, liabilities, and expenses incurred by [Acme] on a pro rata basis against the amounts of principal and interest payable to [the shareholders] under the terms of the promissory notes referred to in Section 4(d) with respect to the indemnification by [the shareholders] owning preferred stock of Sheldon.
 
 
 8
 The shareholders submitted the Litigation List to Acme, but the list did not mention an incident relating to Martin Manufacturing Co., Inc. ("Martin"). Martin had purchased, in 1980, a hydraulic machine tool from Sheldon but was dissatisfied with it. On October 1, 1981, Martin filed a lawsuit against Sheldon based on that incident.
 
 
 9
 Pursuant to the Agreement, the shareholders initially received an aggregate lump sum payment of $1.8 million and received Acme's promissory notes for the remaining balance payable in two installments: July 1, 1982 and July 1, 1983. Acme paid the shareholders the initial installment, and all outstanding interest, on July 1, 1982. Acme has refused to pay the shareholders the second installment, under which Acme was obligated to pay the shareholders the remaining principal of $1,249,737.50 plus interest at the rate of 12%. By letter dated June 30, 1983, Acme claimed that it was withholding the second installment because of potential expenses from the lawsuit filed by Martin.
 
 
 10
 On May 18, 1984, the shareholders brought suit against Acme to recover the second installment and all accrued interest. Acme's answer included a general denial of the allegations of the shareholders' complaint. The answer asserted only one affirmative defense: that the complaint failed to state a claim upon which relief could be granted. No counterclaim was brought against the shareholders.
 
 
 11
 The shareholders, after the completion of discovery, moved for summary judgment. The district court, on September 14, 1987, denied the shareholders' second motion for summary judgment. The court, however, held that the complaint adequately notified Acme of the shareholders' claim that Acme did not comply with the terms of the Agreement's set-off provision. The district court also held that paragraph 9.2 of the Agreement unambiguously stated that Acme could only set off the costs actually incurred as of July 1, 1983, and not those costs which might be incurred in the future. The district court denied the motion on the ground that there was a genuine issue of material fact: the amount of any attorneys' fees incurred by Acme prior to July 1, 1983.
 
 
 12
 On November 3, 1987, Acme moved for leave to file a counterclaim instanter. Acme argued in its reply brief that the court should allow it to bring the counterclaim because the district court's September 14, 1987 ruling "changed the nature of the case." The district court denied the motion under Rule 13(f) on the ground that Acme's delay was inexcusable. The district court also found Acme's argument that the nature of the case had been changed to be disingenuous because the complaint adequately notified Acme of the set-off issue. Acme did not move for reconsideration.
 
 
 13
 On June 16, 1988, Acme filed a second motion for leave to file a counterclaim, and also filed the counterclaim as an independent action. Acme argued that because the Martin litigation had not been settled until May, 1988, its action for indemnity did not accrue until that time. The court rejected this position because of its prior ruling that Acme's right of indemnification was fixed by the contract, not by Illinois common law, and accrued the moment Acme incurred expenses in connection with the Martin litigation. The district court then denied the motion on the ground that the first motion to file a counterclaim was filed inexcusably late. See FED.R.CIV.P. 13(f). The court noted that Acme's "renewed attempt to file the same counterclaim that had been rejected four months earlier borders on the frivolous...."
 
 
 14
 The district court, when the final pretrial order was entered, denied Acme's motion in limine to exclude parol evidence offered by the shareholders to construe the meaning of § 1.12. Specifically, the shareholders argued that the phrase: "There is no pending or ... threatened claim (including any product liability or warranty claim), litigation, proceeding, order of court ... against Sheldon ..." was ambiguous. Acme argued that "threatened claim" included every request for service of one of Sheldon's machines. The district court concluded that this interpretation was incorrect because it required "threatened warranty claim" and "warranty claim" to have the same meaning. The court concluded that the drafter, Acme, did not intend the agreement to be redundant. The district court held that this phrase was ambiguous as a matter of law, and that parol evidence was admissible to resolve the ambiguities.
 
 
 15
 On December 6, 1989, the district court granted the shareholders' motion in limine to bar the testimony of Robert Lehmkuhl and Charles L. Tomlinson, both employees of Acme at the time the parties entered into the Agreement. Lehmkuhl and Tomlinson were involved in Acme's efforts to settle the Martin litigation. Acme claimed that they would testify that they discovered undisclosed defects in the type of machine purchased by Martin. The court held that their testimony was not relevant because "the defects themselves are not at issue in this case." The court noted that their testimony would be relevant if it concerned attempts to conceal defects or anticipated litigation. Because neither witness was involved with the stock purchase agreement until after August 14, 1981, the court concluded that their testimony was not relevant.[1]
 
 
 16
 In a second order issued on December 6, 1989, the district court granted the shareholders' motion in limine to exclude evidence regarding Acme's alleged settlement attempts. The district court found that Acme had ignored the shareholders' legitimate and numerous requests for documents relating to Acme's attempt to settle the Martin litigation. The court rejected as frivolous Acme's argument that the shareholders never made a formal request for those documents.[2] The district court granted the shareholders' motion in limine because Acme ignored the shareholders' Rule 34 request for the production of the documents relating to any settlement efforts. The court held that Rule 37(b)(2)(B) and Rule 37(d) barred Acme from introducing any evidence regarding its claimed attempts to settle the Martin litigation.
 
 
 17
 The district court granted two other motions in limine of the shareholders which are at issue on appeal. On January 8, 1990, the district court granted the shareholders' motion in limine to exclude evidence regarding Acme's right to indemnification for amounts incurred after July 1, 1983. The district court noted that it had already denied Acme leave to file a counterclaim for indemnification. The court stated that it would not allow Acme to again raise the set-off issue merely by re-labeling it as an indemnification issue.
 
 
 18
 Also on January 8, 1990, the district court granted the shareholders' motion in limine to exclude evidence regarding the shareholders' alleged breach of contract. The court found that breach of contract is an affirmative defense and that Acme had failed to properly plead that defense in accordance with Rules 8(c) and 9(c).
 
 
 19
 The district court, on May 29, 1990, granted the shareholders' amended motion for summary judgment. The court found that Acme contested the shareholders' claim on the ground that they did not perform the contract. Because Acme did not properly plead the affirmative defense of breach of contract, and the shareholders alleged that they performed the contract, the court ruled that under Rule 8(d) Acme admitted that element of the shareholders' claim. Judgment was entered on May 31, 1990 in favor of the shareholders, and against Acme in the amount of $1,249,737.50 plus interest at the rate of 12 percent per annum until the judgment is paid. The district court, on May 31, 1990, dismissed with prejudice Acme's counterclaim which was filed as an independent action, No. 88 C 4774. Acme appeals from the judgment. We affirm.
 
 
 20
 On appeal, Acme argues first that the shareholders' complaint should be dismissed because it rested solely upon evidence which is inadmissible under the parol evidence rule. This argument is without merit. Acme fails to address the district court's rulings of September 14, 1987 and February 5, 1988 that the shareholders' complaint sufficiently notified Acme of their claim that Acme "did not have the right under the Agreement to set off from the payments [to the shareholders] the amount which [Acme] set off" (emphasis in original). The district court, therefore, found that the shareholders' complaint stated a cause of action. We see no reason to disturb that determination.
 
 
 21
 Acme did, however, move to exclude parol evidence offered by the shareholders to interpret the sentence: "Pending Litigation. There is no pending or ... threatened claim (including any product liability or warranty claim), litigation, proceeding, order of any court ... against Sheldon ..." in paragraph 1.12 in the Agreement. The district court held that the parol evidence was admissible to construe the meaning of that paragraph after finding ambiguous the term "threatened claim." See Canada Dry Corp. v. Nehi Beverage Co., Inc., 723 F.2d 512, 519 (7th Cir.1983); Sunstream Jet Express, Inc. v. International Air Service Co., 734 F.2d 1258, 1266 (7th Cir.1984); Storybook Homes, Inc. v. Carlson, 19 Ill.App.3d 579, 312 N.E.2d 27, 29 (1974) (holding that the question of whether a term in a contract is ambiguous is to be determined by the court). Acme argues that the district court erred because "threatened claim" includes any possible warranty claim against Sheldon. Acme does not, however, elaborate on this assertion.
 
 
 22
 We review a district court's decision to admit or exclude evidence for a clear abuse of discretion. United States v. Foster, 939 F.2d 445, 450 (7th Cir.1991). See also Binks Mfg. Co. v. National Presto Indust., Inc., 709 F.2d 1109, 1115 (7th Cir.1983) (reviewing under a clear abuse of discretion standard the district court's ruling on a motion in limine to admit extrinsic evidence). As the district court recognized, Acme's argument that the term "threatened claim" includes any possible warranty claim is implausible because the Agreement also refers to "warranty claims." Under Acme's interpretation both phrases would have the same meaning because the phrase "warranty claim" could certainly include the imminent filing of a lawsuit. The district court noted that this interpretation would render the term "threatened" redundant and would violate the principle of contract interpretation which requires courts to construe terms so as to avoid rendering other terms redundant or meaningless. See State of Illinois ex rel. Skinner v. Lombard Co., 106 Ill.App.3d 307, 62 Ill.Dec. 540, 543, 436 N.E.2d 566, 569 (1982). We agree with the district court that Acme's interpretation of the terms "threatened claim" and "warranty claim" does not follow logically from the text of paragraph 1.12.
 
 
 23
 We also agree with the district court that other phrases and terms in paragraph 1.12 are ambiguous. Paragraph 1.12, read without parentheses, distinguishes between a "pending warranty claim" and a "threatened warranty claim." The text does not allow us to determine how the parties meant to distinguish between these concepts. A customer requesting that Sheldon service a product can be viewed under the Agreement as making a pending warranty claim about the product. The claim is "pending" before the manufacturer. The customer can also be viewed as making a "threatened warranty claim." A "threatened warranty claim" might also be a claim that will soon be filed in court. The phrase "pending warranty claim" might also have the same meaning. The meaning of the phrases "pending warranty claim" and "threatened warranty claim" cannot be determined from the face of the Agreement. Thus, we conclude that the district court did not abuse its discretion in determining that the phrase "threatened claim" was ambiguous as a matter of law.
 
 
 24
 We must also decide whether the district court erred in denying Acme's two motions to file a counterclaim for indemnification of its expenses in connection with the Martin litigation. Acme first attempted to file a counterclaim three years after the filing of the complaint. Acme made its second motion six months later and ignored the district court's previous denial of the first motion. The district court found that Acme's first counterclaim was filed inexcusably late under Rule 13(f). See FED.R.CIV.P. 13(f). Before we analyze that ruling, we must determine when Acme's counterclaim for indemnification accrued.
 
 
 25
 The district court found that the shareholders' complaint gave Acme proper notice of their claim that Acme improperly asserted a set-off against the shareholders. The court also held that Acme's counterclaim accrued when Acme first incurred expenses in connection with the Martin litigation, long before Acme filed its answer. Acme argues that its counterclaim accrued only when the Martin litigation was settled.
 
 
 26
 The shareholders argue that Acme should be estopped from raising its argument that its counterclaim accrued only after the Martin litigation was settled. Acme's accrual argument, which was presented to the court with its second motion to file a counterclaim, is inconsistent with Acme's position when it made its first motion to file a counterclaim. At that time, the Martin litigation had not been settled. A party filing a counterclaim must clearly believe that the underlying cause of action has accrued. We agree with the shareholders that Acme's accrual argument is inconsistent with its prior position.
 
 
 27
 Acme's accrual argument is also inconsistent with its position that its right of set-off accrued when it refused to make the second required installment payment to the shareholders, on June 30, 1983. As paragraph 9.2(a) of the Agreement clearly states, Acme's right of set-off is one means of exercising its right of indemnification. Therefore, it is impossible for Acme's right of set-off to have accrued prior to its right of indemnification. If Acme is correct that its claim for indemnification accrued only after the Martin litigation was settled, Acme has intentionally and tortiously withheld the shareholders' money. We find that Acme is bound by its prior claim that its rights accrued at the moment it purported to exercise its right of set-off.
 
 
 28
 Even if we were to reach the merits of Acme's accrual argument, Acme must lose. Acme argues that under Illinois law an action for indemnity accrues only when the indemnitee has either been found liable or had settled the underlying action. See Forty-Eight Insulations v. Johns-Manville Products Corp., 472 F.Supp. 385, 393 (N.D.Ill.1979); Commonwealth Edison Company v. Encompas, Inc., 158 Ill.App.3d 852, 110 Ill.Dec. 811, 815, 511 N.E.2d 988, 992 (1987). Acme thus insists that its action for indemnification did not accrue until May, 1988, when the Martin litigation was settled. Acme is incorrect. As the shareholders point out, Forty-Eight Insulations and Commonwealth Edison are concerned with indemnity under Illinois common law. Acme's counterclaim was based upon a contractual right of indemnification. Acme's right to indemnity is therefore fixed by the Agreement, not by Illinois common law. See Quilico v. Union Oil Co. of California, 58 Ill.App.3d 87, 15 Ill.Dec. 784, 791, 374 N.E.2d 219, 226 (1978) (" 'Recovery under a contract providing for indemnity obviates any right to recovery under the common law theory of implied indemnity since by such an express contract the parties have already themselves determined how and under what circumstances losses shall be allocated.' ") (quoting Prater v. Luhr Brothers, Inc., 51 Ill.App.3d 685, 9 Ill.Dec. 142, 147, 366 N.E.2d 399, 404 (1977)).
 
 
 29
 Illinois follows the general rule that a cause of action for contractual indemnification accrues when the covenant of indemnity is breached by the indemnitor. See 42 C.J.S. Indemnity, § 14(a) (a cause of action for contractual indemnification accrues when the covenant of indemnity is breached by the indemnitor); Lamp, Inc. v. International Fidelity Ins. Co., 143 Ill.App.3d 692, 97 Ill.Dec. 664, 667, 493 N.E.2d 146, 149 (1986); cf. Diaz v. Diaz, 83 Ill.App.3d 341, 38 Ill.Dec. 615, 616, 403 N.E.2d 1219, 1220 (1980) (" 'Where a contract of indemnity contains a promise by the indemnitor to perform a certain act or to make specified payments for the benefit of the indemnitee, an immediate right of action accrues to the indemnitee upon the failure of the indemnitor to perform, regardless of whether any actual damage has been sustained.' ") (quoting 41 Am.Jur.2d Indemnity § 1, at 687 (1968)).
 
 
 30
 Moreover, under Illinois law, the accrual of Acme's claim for indemnification did not depend on the settlement of the Martin litigation. See Lamp, 97 Ill.Dec. at 667, 493 N.E.2d at 149 (holding that the defendant-counterplaintiff's right to indemnification from counterdefendant under an indemnity agreement "arose immediately upon [plaintiff's] claim regardless of [counter]defendant's liability on the underlying claim"). See also Schroeder v. Pennsylvania R.R. Co., 397 F.2d 452, 459 (7th Cir.1968) (finding that the Railroad's right of indemnification was not dependent on rendition of a judgment against it).
 
 
 31
 Therefore, under Illinois law, Acme's counterclaim accrued on June 30, 1983, when Acme claims the shareholders breached the representations in paragraph 1.12 of the Agreement. Acme was required to include the counterclaim in its answer, and could not file its claim under Rule 13(e) because the claim accrued before Acme was required to file its answer. Therefore, Acme could only file its belated counterclaim pursuant to Rule 13(f). FED.R.CIV.P. 13(f).
 
 
 32
 The district court held that Acme's delay in filing its counterclaim was inexcusable. The district court, pursuant to Rule 13(f), has discretion to deny a defendant's motion to file a counterclaim if the defendant fails to offer an explanation for not asserting the claim in the first instance or otherwise fails to explain its delay. See Ralston Purina Co. v. Bertie, 541 F.2d 1363, 1367 (9th Cir.1976). Because Acme did not provide a legitimate excuse for its delay, we conclude that the district court did not abuse its discretion in denying Acme's first motion for leave to file a counterclaim. See Federal Deposit Ins. Corp. v. Staudinger, 797 F.2d 908, 911 (10th Cir.1986) (finding no abuse of discretion where district court denied leave to add a counterclaim where defendant had been aware of the facts underlying that claim for sixteen months before asserting it). Acme's second motion was also properly denied: if the first motion was inexcusably late, an additional six month delay could not have improved Acme's position.
 
 
 33
 Acme also contends that the district court erred in granting summary judgment in favor of the shareholders. It is well established that we review a district court's grant of summary judgment de novo. See, e.g. La Preferida, Inc. v. Cerveceria Modelo, S.A., 914 F.2d 900, 905 (7th Cir.1990). To uphold a grant of summary judgment, "we must 'view the record and all inferences drawn from it in the light most favorable to the party opposing the motion,' " Kreutzer v. A.O. Smith Corporation, 951 F.2d 739, 742-73 (7th Cir.1991) (quoting Lohorn v. Michal, 913 F.2d 327, 331 (7th Cir.1990)), and we must conclude that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). Kreutzer, at 742-43; First Wisconsin Trust Co. v. Schroud, 916 F.2d 394, 398 (7th Cir.1990).
 
 
 34
 The district court, in denying the shareholders' second motion for summary judgment, held that the Agreement prohibited Acme from setting off all liabilities it incurred relating to the Martin litigation from the payments it was required to make to the shareholders. The district court, quoting paragraph 9.2(c) of the Agreement, held that the Agreement expressly allows Acme to set off "the amounts of any such losses, costs, liabilities, and expenses incurred " (emphasis in original) by Acme prior to July 1, 1983, not which Acme might incur after that date.[3]
 
 
 35
 It is well settled that interpreting the provisions of a written contract is a question of law. See, e.g., Air Line Stewards and Stewardesses Assoc. v. American Airlines Inc., 763 F.2d 875, 878 (7th Cir.1985), cert. denied, 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986). Acme does not explain why the district court erred in denying the shareholders' second motion for summary judgment. We agree with the district court's determination that Acme could only set off the expenses it incurred in connection with the Martin litigation prior to July 1, 1983.
 
 
 36
 In its final order of May 29, 1990, the district court concluded that the shareholders had established a prima facie case of breach of contract. Several rulings by the district court barred Acme from introducing evidence of the shareholders' breach of contract. If these rulings were correct, the district court's grant of summary judgment for the shareholders must also be upheld because Acme cannot demonstrate a genuine issue of material fact requiring a trial. See FED.R.CIV.P. 56(c).
 
 
 37
 The district court correctly found that the shareholders had proved a prima facie case of breach of contract by establishing the following facts: (1) the existence of a valid, binding contract; (2) the shareholders' performance of their obligations under the contract; (3) Acme's failure to perform its obligations under the contract; and (4) damages to the shareholders as a result of Acme's failure to perform. On appeal, Acme argues only that it should be allowed to present evidence that the shareholders have not performed their obligations under the contract.
 
 
 38
 The district court held that Acme was not permitted to introduce any evidence of the shareholders' nonperformance because Acme failed to comply with Rules 8(c) and 9(c). As we noted above, we reverse a district court's decision to admit or exclude evidence only if there was a clear abuse of discretion. Foster, 939 F.2d at 450.
 
 
 39
 Rule 8(c) requires a party "to set forth affirmatively ... [any] matter constituting an avoidance or an affirmative defense." Acme did not raise in its answer the defense of breach of contract. Acme's answer did, however, state that the shareholders' complaint "fail[ed] to state a cause of action upon which relief can be granted." The district court held that Acme's claim was an affirmative defense and under Rule 8(c) should have been raised as an affirmative defense in Acme's answer. The district court therefore granted the shareholders' motion in limine to exclude any evidence that the shareholders breached the contract.
 
 
 40
 We agree with the district court that Illinois regards a plaintiff's breach of contract as an affirmative defense. See e.g., Regional Transp. Auth. v. Burlington Northern, Inc., 100 Ill.App.3d 779, 55 Ill.Dec. 818, 822, 426 N.E.2d 1143, 1147 (1981) (holding that the defendant's claim that the plaintiff breached the contract constituted an affirmative defense to be raised by defendant); First Fed. Sav. & Loan Ass'n of Chicago v. National Boulevard Bank of Chicago, 104 Ill.App.3d 1061, 60 Ill.Dec. 798, 799-800, 433 N.E.2d 1036, 1037-38 (1982) (the plaintiff's breach of contract was raised as an affirmative defense in a mortgage foreclosure suit). We find no abuse of discretion in the district court's ruling. See Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 235 (7th Cir.1991) (failure to plead an affirmative defense as required by Rule 8(c) results in waiver of that defense); Fort Howard Paper Co. v. Standard Havens, Inc., 901 F.2d 1373, 1377 (7th Cir.1990).
 
 
 41
 The district court also held that Acme could not introduce any evidence of the shareholders' alleged breach of contract because Acme failed to comply with Rule 9(c). Rule 9(c) requires a defendant to allege a plaintiff's nonperformance of conditions precedent "specifically and with particularity." Acme's answer contained only a general denial of the shareholders' performance. The district court did not abuse its discretion in excluding evidence that the shareholders breached the agreement because Acme did not comply with Rules 8(c) and 9(c). See Runnemede Owners, Inc. v. Crest Mortgage Corp., 861 F.2d 1053, 1058 (7th Cir.1988) (under Rule 9(c) the failure of an alleged condition precedent must be specifically alleged); Brooks v. Monroe Systems For Business, Inc., 873 F.2d 202, 205 (8th Cir.1989), cert. denied, 493 U.S. 853, 110 S.Ct. 154, 107 L.Ed.2d 112 (1989) (same).
 
 
 42
 We also find that the district court did not err in granting two other motions in limine brought by the shareholders. First, the district court excluded certain documents from evidence which concerned whether Acme made any settlement offers before July 1, 1983, in connection with the Martin litigation. The shareholders made numerous requests pursuant to Rule 34 for the production of these documents. The district court exercised its discretion pursuant to Rule 37(b)(2)(B) and 37(d) to exclude any evidence that Acme attempted to settle the Martin litigation. The district court did not abuse its discretion. See Parker v. Freightliner Corp., 940 F.2d 1019, 1024-25 (7th Cir.1991) (the district court has broad discretion to determine whether a party has complied with its discovery orders under Rule 37(b)(2)(B)); Soderbeck v. Burnett County, Wis., 821 F.2d 446, 452-54 (7th Cir.1987) (if a party fails to serve proper answers to another party's interrogatories the court may prohibit that party from introducing into evidence matters that were requested but not disclosed pursuant to Rules 37(b)(2)(B) and (d)).
 
 
 43
 Second, the district court excluded the testimony of Robert Lehmkuhl and Charles Tomlinson on the ground that neither witness was competent to testify on any of the factual issues in the case. Lehmkuhl was to testify concerning engineering problems with the machine involved in the Martin litigation and Tomlinson was to testify concerning the service history of that machine and other problems in the service department. Neither witness had knowledge of the events leading up to the August 14, 1981 Agreement. Moreover, neither witness had any knowledge of the meaning of the terms "threatened litigation" and "threatened claim," or of any efforts to conceal defects or anticipated litigation. The district court correctly found that their testimony was not relevant.
 
 
 44
 Acme cannot point to a genuine issue of material fact requiring a trial; therefore, the district court's decision to grant summary judgment in favor of the shareholders is also correct.[4]
 
 
 45
 Acme is, however, correct that the district court erroneously calculated the post-judgment interest rate. The final judgment states that interest on the judgment shall accrue at the rate of 12 percent until the judgment is paid. Acme points out, and the shareholders do not disagree, that 28 U.S.C. § 1961(a) establishes that the rate of post-judgment interest for a money judgment shall be "equal to the coupon issue yield equivalent ... of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment."[5] The week preceding the entry of final judgment on May 31, 1990, the applicable rate was 8.70%. Accordingly, the judgment should be modified to reflect that rate of post-judgment interest.
 
 
 46
 Therefore, we AFFIRM, with a modification of the post-judgment interest rate, the judgment of the district court.
 
 
 
 *
 Judge Wood, Jr., assumed senior status on Jan. 16, 1992 which was after consideration of this case
 
 
 [1]
 The district court further found that Acme's argument was not well-grounded in fact and was used to harass, and assessed Rule 11 sanctions against Acme's attorneys in the amount of $50 each
 
 
 [2]
 The court assessed a $600 sanction under Rule 11 against Acme and its attorneys for falsely asserting that the documents were never formally requested by the shareholders and for misstating the deposition testimony of David Swift, Vice President and General Counsel of Acme. The court noted that Swift's testimony directly contradicted Acme's contention that it offered to settle the Martin litigation before June 30, 1983
 
 
 [3]
 The parties have agreed that Acme incurred $7,000.56 in expenses as of July 1, 1983
 
 
 [4]
 Acme also argues that the district court erred in imposing Rule 11 sanctions against Acme's attorneys. We conclude, however, that the district court did not err in twice sanctioning Acme and its attorneys for misstating facts and for raising frivolous arguments
 
 
 [5]
 28 U.S.C. § 1961(b) also provides that "[i]nterest shall be computed daily to the date of payment ... and shall be compounded annually."