## JACKSON NATIONAL LIFE INSURANCE COMPANY, Plaintiff,

v.

## GOFEN & GLOSSBERG, INC., Boulevard Bank National Association and Midwest Securities Trust Company, Defendants.

No. 93 C 1539.

United States District Court, N.D. Illinois, Eastern Division.

Aug. 21, 1995.

---

**152**

James J. Casey, Stacey Lee Prange, Michael J. Dolesh, Keck, Mahin & Cate, Chicago, IL, for Jackson Nat. Life Ins. Co.

Jay A. Erens, Claudette P. Miller, James Dennis Ossyra, Adam M. Kingsley, Hopkins & Sutter, P.C., Chicago, IL, for Gofen & Glossberg, Inc.

Thomas D. Allen, Thomas Michael Lynch, Donald de Forest Hindman, Wildman, Harrold, Allen & Dixon, Chicago, IL, for Boulevard Bank Nat. Ass'n.

Scott E. Early, Dianne L. Hicklen, Foley & Lardner, Chicago, IL, Douglas M. Hagerman, Foley & Lardner, Milwaukee, WI, for Midwest Securities Trust Co.

*MEMORANDUM OPINION
AND ORDER*

ASPEN, Chief Judge:

Although all claims against it have been dismissed, defendant Midwest Securities Trust Company ("MSTC") remains in this litigation because of its cross-claim for indemnification against defendant Boulevard Bank National Association ("Boulevard"). In lieu of participating in the final pretrial order submitted by the remaining parties, MSTC and Boulevard have filed cross-motions for summary judgment on MSTC's claim. For the reasons set forth below, Boulevard's motion is granted and MSTC's motion is denied.

### I. Background [1]

From 1984 to approximately 1990, Jackson National Life Insurance ("JNL") engaged Boulevard to hold certain securities on its behalf. On March 3, 1986 and March 11, 1986, JNL made two purchases of 12% Senior Subordinated Debentures issued by MGM Grand Hotels ("12% Debentures") at a total price of approximately $6.5 million. As with many of its securities, JNL had Boulevard hold these debentures as custodian. Boulevard, in turn, had MSTC hold the 12% Debentures pursuant to a Participant's Agreement entered into by MSTC and Boulevard in March 1981.

On or about March 21, 1986, MGM filed with the Securities and Exchange Commission a prospectus for an exchange offer ("MGM Exchange Offer"), wherein MGM offered to exchange the 12% Debentures for higher yielding secured notes. Except for JNL, almost all other 12% Debenture holders took advantage of the MGM Exchange Offer. Subsequently, MGM's successor defaulted on its obligations and filed for bankruptcy, rendering the 12% Debentures essentially worthless.

In March 1993, JNL filed this diversity action against the various defendants, alleging that their malfeasance had caused at least $50,000 in damage. JNL's initial complaint alleged that Boulevard had received notice of the MGM Exchange Offer in 1986,

---

1. A more detailed discussion of the facts may be found in our prior opinion, *Jackson Nat'l Life* *Ins. Co. v. Gofen & Glossberg, Inc.,* 882 F.Supp. 713 (N.D.Ill.1995).

but did not pass this information along to either JNL or its investment advisor, thereby preventing JNL from exchanging the 12% Debentures for the secured notes. In its amended complaint, filed in March 1994, JNL added MSTC as an additional defendant. MSTC filed its cross-claim against Boulevard in September 1994, invoking a contractual indemnity provision contained in the Participant's Agreement. On January 4, 1995, we dismissed JNL's and Boulevard's claims against MSTC, 882 F.Supp. at 718–22, and denied Boulevard's motion for a more definite statement of MSTC's cross-claim. *Id.* at 725–27.

## II. Summary Judgment Standard

■ Summary judgment is appropriate if "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard places the initial burden on the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 56(c)). Once the moving party has met this burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c); *see Maxwell v. City of Indianapolis,* 998 F.2d 431, 433 (7th Cir.1993). In satisfying these burdens, the parties are required to comply with General Rules 12(M) and 12(N) of the United States District Court for the Northern District of Illinois ("Local Rules 12(M) and 12(N)"). These rules direct the parties to explicitly state what material facts they believe justify the grant (or denial) of summary judgment, and to cite specific pieces of evidence which support their assertions. Failure to comply with Local Rules 12(M) or 12(N) justifies either denying the motion or deeming unrefuted facts admitted.

## III. Discussion

Notwithstanding the fact that the parties have challenged each other's factual averments, MSTC and Boulevard still argue that no material facts are in dispute and each one claims to be entitled to summary judgment on MSTC's cross-claim. This cross-claim against Boulevard is based on the Participant's Agreement between the two parties that was in effect during the entire time period from 1982 to 1990 when Boulevard used MSTC a custodian. MSTC first contends that Paragraph 9 of the agreement obligates Boulevard to indemnify it for any losses it sustained because of the claims asserted against it in this litigation. MSTC also argues that its Rules, which are incorporated into the agreement, *see* Participant's Agreement ¶¶ 1, 3, obligate Boulevard to reimburse it for the losses and expenses it incurred in defending against these claims.

■ Indemnity provisions contained in a contract are interpreted in Illinois according to the intention of parties. *Charter Bank v. Eckert,* 223 Ill.App.3d 918, 166 Ill.Dec. 282, 288, 585 N.E.2d 1304, 1310 (1992).[2] In deciding what the parties intended an indemnity provision to mean, we examine all the terms of the agreement and the factual setting of the case. *Id.* However, indemnity provisions are not favored and are strictly construed against the indemnitee. *Id.; Fidelity & Deposit Co. of Md. v. Rosenmutter,* 614 F.Supp. 348, 351 (N.D.Ill.1985).

■ MSTC first grounds its cross-claim in Paragraph 9 of the Participant's Agreement, which states:

[Boulevard] hereby agrees to indemnify [MSTC] and any nominee in the name of which securities credited to the account of [Boulevard] by [MSTC] are registered against any and all loss, liability or expense sustained, without fault on the part of [MSTC] or such nominee, by reason of the registration of securities credited to the account of [Boulevard] in the name of any such nominee, including (i) assessments, (ii) losses, liabilities and expenses

2. Questions of contract interpretation raised in this court are governed by state law, *Air Line Stewards & Stewardesses Ass'n Local 550 v. American Airlines, Inc.,* 763 F.2d 875, 877 (7th Cir.

1985), *cert. denied,* 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986), and the parties do not dispute that Illinois law controls.

arising from claims of third parties and from taxes or other governmental charges, and (iii) related expenses in respect of any such securities.

Participant's Agreement, ¶ 9. MSTC argues that this provision "requires Boulevard to indemnify MSTC for any and all loss, expense or liability sustained as a consequence of MSTC's provision of custodial services to Boulevard." MSTC's Reply in Support of its Motion, at 2. Boulevard contends, however, that it is only obligated to indemnify MSTC if its losses were incurred "by reason of the registration of securities credited to the account of [Boulevard]."[3] Boulevard asserts in its 12(M) statement that this condition has not been fulfilled. In support, Boulevard submits an affidavit from a former employee who explains that the phrase "registration of securities" refers to the process by which the name of the holder of the securities is registered. Boulevard's 12(M) ¶ 8.[4] This employee also maintains that notifying participants of capital change events, such as an exchange offer, is a separate service provided by depositories, and is not related to the registration of a security. *Id.* ¶ 9. Rather that pointing to evidence in its 12(N) response that would contradict these statements, MSTC simply denies their veracity. Such a response is clearly insufficient under Local Rule 12(N)(3) and Fed.R.Civ.P. 56(e), and therefore we deem Boulevard's statements to be admitted by MSTC.[5] *See Stewart v. McGinnis,* 5 F.3d 1031, 1034 (7th Cir.1993) (noting that "district court may strictly apply Rule 12 N"), *cert. denied,* — U.S. ——, 114 S.Ct. 1075, 127 L.Ed.2d 393 (1994); *Bell, Boyd & Lloyd v. Tapy,* 896 F.2d 1101, 1103 (7th Cir.1990) (finding 12(N) response inade-

quate where defendant failed to reference any supporting materials).

■■■■ Given these admissions, we must conclude that the losses at issue were not caused by reason of the registration of securities to the account of Boulevard. The basis for JNL's and Boulevard's claims against MSTC was its alleged failure to notify them of a capital change event—i.e., the exchange offer of the 12% Debentures. There is no allegation that the claimed losses resulted from the registration of the 12% Debentures in Boulevard's name, or that somehow this registration prevented MSTC from giving proper notice of the exchange offer. Thus, because the underlying litigation did not ensue from MSTC's recording of the 12% Debentures in Boulevard's name, any losses sustained by MSTC did not arise because of the "registration of securities" and are not covered by Paragraph 9 of the Participant's Agreement. Moreover, even if we could twist the language of the agreement to fit this case, we would not be inclined to do so because MSTC, as drafter of the indemnity provision, bears the onus of its strict construction. *Charter Bank,* 585 N.E.2d at 1310. Accordingly, we conclude that Paragraph 9 of the Participants Agreement does not provide MSTC with a basis for recovering the expenses it incurred in this lawsuit.

MSTC next argues that it is entitled to summary judgment on its cross-claim because of two Rules that were incorporated into the Participant's Agreement. MSTC first cites Article I, Rule 3, Section 2 ("Rule 3"):

> Recording in the official books of the company of the name and address of the holder of each bond or certificate of stock, with the date of its issue, and, in the case of a transfer of stock from one holder to another, the names of both parties and such other details as will identify the transaction and preserve an official record of its essential facts.

> *Black's Law Dictionary* 1284 (6th ed. 1990).

**3.** Boulevard also argues that Paragraph 9 does not apply because JNL and Boulevard alleged that MSTC was "at fault" for not providing notice of the MGM Exchange Offer. However, this cannot be resolved on a motion for summary judgment because the parties dispute whether MSTC actually gave notice of the exchange event to Boulevard. Regardless, because we find Boulevard's first argument persuasive, as discussed more fully below, we need not address the merits of this alternative position advanced by Boulevard.

**4.** This interpretation is supported by Black's, which defines the phrase "registration of securities" in these terms:

**5.** MSTC's decision not to present any evidence on this issue is particularly telling, given that in our previous opinion we explicitly pointed out the pivotal nature of the phrase "by reason of the registration of securities" to the outcome of this litigation. 882 F.Supp. at 726 n. 8.

Participants shall indemnify and hold harmless [MSTC] against any loss, liability or expense sustained, including (i) assessments, (ii) losses, liabilities and expenses arising from claims of third parties and from taxes or other government charges, (iii) related expenses in respect to any Security, and (iv) losses, liabilities and expenses arising from [MSTC's] reliance on or by reason of the breach of any warranty provided by the Participant to [MSTC] at the time a Security is delivered or deposited to [MSTC]...., provided, however, Participants shall not be liable for any such losses, costs, expenses, damages and liabilities that may arise by reason of the grossly negligent, fraudulent or criminal acts of [MSTC] or its respective officers, employees or agents.

MSTC also points to Article VII, Rule 2, Section 2 ("Rule 2") to support of its cross-claim:

A Participant may be charged for any unusual expenses caused directly or indirectly by such Participant, including, but without limitation, the cost of producing records pursuant to court order or other legal process in any litigation or other legal proceeding, whether or not such Participant is a party to such litigation or proceeding.

MSTC maintains that based on these two Rules, Boulevard is obligated to indemnify it for all losses, liabilities and expenses incurred in defending against the claims asserted against it in the main litigation.

█ In its response and its own motion for summary judgment, Boulevard argues that the copies of these Rules attached to MSTC's amended cross-claim were published sometime after 1992, and points to the lack of evidence demonstrating that they were in effect in 1986 when the alleged wrongful acts took place. MSTC responds by citing another of its Rules, which it calls the Amendment Rule:

That [Boulevard] will be bound by any amendment to the By-Laws or Rules of

[MSTC] *with respect to any transaction occurring subsequent to the time such amendment takes effect* as fully as though such amendment were a part of the By-Laws and Rules of [MSTC] at the time application is made, provided however that no such amendment shall affect the applicant's right to cease to be a Participant unless before such amendment becomes effective the applicant is given an opportunity to give written notice to [MSTC] of its election that [MSTC] shall definitively cease to act for it.

Article V, Rule 1, Section 4(f) ("Rule 1") (emphasis added); *see also* Participant's Agreement ¶ 2 (containing essentially the same language).[6] The force of this Rule, MSTC argues, renders Rules 2 and 3 applicable to this case and thereby obligates Boulevard to indemnify it. We disagree. By its terms, Rule 1 only applies to transactions that occur subsequent to the passage of a new Rule, and does not provide for retroactive application of a new Rule. MSTC contends that the language of the Rule indicating that amendments are to be considered the same as original Rules somehow trumps this clause. Yet we fail to see how this language justifies reading out the express limitation that Rule 1 apply only to "transactions occurring subsequent to the time such amendment takes effect." Under a plain meaning of the provision, it can only render enforceable those Rules which are promulgated prior to the complained of conduct.

█ It its final salvo, MSTC maintains that the event at issue, for purposes of Rule 1, is not the alleged failure to provide notice of the exchange event in 1986, but the filing of the JNL's amended complaint in 1994. This event, MSTC argues, caused the "losses, liabilities and expenses" it now seeks to recover, and therefore should be considered the relevant date. In support of this argument, MSTC cites *Carroll v. Acme–Cleveland Corp.*, 955 F.2d 1107, 1113 (7th Cir.1992), which states the general rule that "a cause of action for contractual indemnification accrues

---

**6.** Although Boulevard attacks Rule 1 on the same grounds that it raised in objecting to Rules 2 and 3—that is, the absence of any evidence showing that the Amendment Rule was in effect in 1986— this salvo is of limited effect given that a virtually identical provision is contained in the Participant's Agreement.

when the covenant of indemnity is breached by the indemnitor." To be sure, a claim of indemnification cannot be maintained until an indemnitee actually seeks payment from the indemnitor. *See Lamp, Inc. v. International Fidelity Ins. Co.*, 143 Ill.App.3d 692, 97 Ill. Dec. 664, 667, 493 N.E.2d 146, 149 (1986). MSTC wishes to infer from this principle that Boulevard is necessarily liable for losses which stem from events that took place *before* Rules 2 and 3 were in effect, simply because MSTC was sued after the effective date of the Rules. This conclusion is dictated neither by case law nor logic. In *Carroll* and the other cases cited by MSTC, it was clear that the wrongful act did not precede the signing of the indemnity agreement. *See, e.g., Carroll*, 955 F.2d at 1107. In this case, there is no evidence that Rules 2 and 3 were in effect when the alleged misconduct took place; on the contrary, the only evidence introduced by the parties suggests that the wrongful act occurred prior to the promulgation of these Rules. The fact that JNL's suit was not filed until years later does not somehow justify holding Boulevard liable for events which occurred before the passage of indemnification Rules. In short, we fail to see how the timing of the instant lawsuit should modify Boulevard's obligations under MSTC's Rules.

Accordingly, as MSTC has failed to introduce any evidence showing that Rules 2 or 3 were in effect during the 1986 MGM Exchange Offer fiasco, we conclude that Boulevard is entitled to judgment as a matter of law.

## IV. Conclusion

For the reasons set forth above, MSTC's motion for summary judgment is denied and Boulevard's motion for summary judgment is granted. It is so ordered.