CHARTER BANK, Plaintiff, v. JAMES E. ECKERT *et al.*, Defendants and Counterplaintiffs (Donald A. Cook, Defendant and Counterdefendant and Counterplaintiff-Appellant; J. Clarke Nims, as Personal Representative for Frederick C. Stiles, Deceased, Defendant and Counterdefendant-Appellee; Forrest Hall *et al.*, Defendants).

Fifth District   No. 5—90—0685

Opinion filed January 29, 1992.

Robert P. Schulhof, of Carbondale, for appellant.

Norma J. Beedle, of Carbondale, for appellee.

JUSTICE LEWIS delivered the opinion of the court:

Plaintiff, Charter Bank (Charter) (formerly First Federal Savings and Loan Association of Sparta), filed a complaint for foreclosure upon the property referred to as Forrest Hall, a student dormitory located in Carbondale, Illinois. In Charter's complaint, the named defendants included James Eckert, Lary Eckert, and Eckert Land Co. (the Eckerts), Donald A. Cook (Cook), and Frederick C. Stiles (Stiles). Subsequently, the Eckerts filed a counterclaim against Cook, claiming that Cook was personally obligated on the mortgage as he had expressly agreed to pay and to assume the mortgage on Forrest Hall in a purchase agreement involving that property. In turn, Cook filed a counterclaim against Stiles, claiming Stiles was liable to Cook for any liability incurred as a result of the mortgage foreclosure under an indemnification covenant contained in a contract executed between Stiles and Cook. Ultimately, the circuit court of Jackson County entered a judgment for foreclosure on Forrest Hall, Forrest Hall was sold at a public auction, and a deficiency judgment was entered against the Eckerts and in favor of Charter. Following the consideration of the Eckerts' counterclaim against Cook and of Cook's counterclaim against Stiles, the court held that Cook was liable to the Eckerts for the deficiency judgment on Forrest Hall and for other related costs, but the court determined that Stiles was not liable to Cook for the deficiency judgment under the indemnification covenant invoked by Cook. Cook appeals from this order, but the Eckerts and Charter are not involved in this appeal.

On appeal, Cook raises three issues: (1) that the court's decision that Stiles was not liable to Cook was erroneous; (2) that the court erred in its decision of September 14, 1990, as the court had already ruled on liability in a previous order in which the court held that Stiles was liable to Cook, thereby reversing itself by its subsequent decision; and (3) that the parties were denied a fair and impartial

hearing because of the judge's improper and prejudicial comments. We affirm.

The facts of this case are as follows: On August 29, 1986, Charter and the Eckerts entered into a mortgage concerning Forrest Hall, a dormitory located in Carbondale, Illinois, to secure a note of indebtedness of $450,000 between Charter and the Eckerts. On December 31, 1986, Cook purchased Forrest Hall from the Eckerts for $550,000. Under the purchase agreement between Cook and the Eckerts, Cook was to pay a down payment of $100,000 cash to the Eckerts and was to assume the Eckerts' mortgage on Forrest Hall for the balance of the purchase price. According to the language of the purchase agreement, the Eckerts understood that immediately following the Eckerts' sale of Forrest Hall to Cook, Cook was to transfer the title to Forrest Hall to a partnership in which Cook and Stiles were partners. The Eckerts further understood that, although the partnership was taking title to the property, the partnership was not assuming the personal obligation of Cook on the mortgage. An amendment to the purchase agreement between Cook and the Eckerts, also executed on December 31, 1986, stated that Cook agreed to "indemnify and save harmless Seller [Eckerts] from all claims, costs, attorneys fees and damages which Seller may incur by reason of default in payment of the aforesaid note and mortgage" on Forrest Hall by Cook.

Cook and Stiles entered into a partnership agreement on December 30, 1986, the day before Cook purchased Forrest Hall. Under the partnership agreement, the purpose of the partnership was to own, manage and lease Forrest Hall as student housing. Pursuant to the partnership agreement, Cook was to purchase Forrest Hall and was to assume the mortgage of this real estate, but immediately following Cook's purchase of Forrest Hall, he was to convey the property to the partnership "subject to the mortgage," which Cook did. Under the purchase agreement between Cook and the partnership, executed the same day as the partnership agreement, Cook sold Forrest Hall to the partnership for $650,000. The purchase price of Forrest Hall consisted of a down payment of $200,000 cash from the partnership ($150,000 from Stiles and $50,000 from Cook), and the balance of $450,000 consisted of the first mortgage with Charter Bank. Under the purchase agreement between Cook and the partnership, neither the partnership nor Stiles was assuming personal liability on the mortgage, but Cook was to continue to assume the obligation of the mortgage. After conveying Forrest Hall to the partnership, the partnership made the mortgage payments and paid the real estate taxes on the property.

Subsequently, on September 30, 1988, Stiles and Cook dissolved their partnership. Under the purchase agreement wherein Stiles bought out Cook's interest in the partnership, Stiles agreed to "indemnify and hold Cook harmless with respect to any and all liability, loss, expense which may be incurred by Cook as a result of any actions taken or not taken" by Stiles or the partnership after the execution of the agreement. Subsequent to this purchase agreement, the partnership discontinued paying the mortgage payments and the real estate taxes on Forrest Hall.

As a result of the nonpayment on the mortgage, Charter filed a complaint for foreclosure on Forrest Hall against the Eckerts, Cook and Stiles on January 4, 1989. As was noted previously, in the Eckerts' answer to the complaint filed on February 16, 1989, the Eckerts counterclaimed against Cook based upon their purchase agreement. On March 1, 1989, Cook filed his answer to the complaint for foreclosure, his answer to the Eckerts' counterclaim, and a counterclaim against Stiles. All of Cook's pleadings filed on March 1, 1989, were verified. Subsequently, on March 15, 1989, Stiles filed an unverified answer to the complaint for foreclosure and an affirmative defense to the complaint, and on March 21, 1989, Stiles filed his unverified answer to Cook's counterclaim and an affirmative defense to the counterclaim.

Cook filed a motion for a judgment on the pleadings against Stiles on April 5, 1989. In that motion, Cook averred that since Stiles filed an unverified answer to Cook's counterclaim, all of the matters alleged in Cook's counterclaim were admitted pursuant to section 2—605 of the Code of Civil Procedure. (Ill. Rev. Stat. 1989, ch. 110, par. 2—605.) Because all matters in his counterclaim were admitted, Cook asked that the court enter a judgment on the pleadings in his favor.

Upon considering Cook's motion for judgment on the pleadings, the court entered an identical order on both July 13, 1989, and July 21, 1989, in which the court found that Stiles' "unexcused unverified Answer to Cook's verified Counter Claim does not constitute an Answer, and that a judgment on the pleadings is justified" and granted Cook's motion for judgment on the pleadings. Further, the court found that, even if Stiles' answer were considered, Stiles' responses to the counterclaim did not go to the heart of the counterclaim. The court held that Stiles was liable to Cook for all costs, attorney fees, and other expenses incurred, "including any liability to Eckert on a possible deficiency." The amount of damages was reserved for prove up at a later date. In this order, the court stated that there was no just reason for delaying appeal, so Stiles appealed the court's order

granting Cook's judgment on the pleadings to this court. In an earlier opinion entered by this court (*Charter Bank v. Eckert* (1990), 198 Ill. App. 3d 499, 555 N.E.2d 1212), Stiles' appeal of this issue was dismissed as it was determined that the order granting Cook judgment on the pleadings was not a final and appealable order, and that this court had no jurisdiction to consider the appeal.

Prior to considering Cook's motion for judgment on his pleadings against Stiles, the court entered a judgment for foreclosure on Forrest Hall and ordered a public sale of the property on May 19, 1989. In the judgment of foreclosure, it was determined that Charter Bank was entitled to a total balance of $481,904.15 on the mortgage of Forrest Hall, and that the property was to be sold at a public auction on August 18, 1989. At the public sale of the property, Forrest Hall was sold to the Eckerts for $305,000 at the sale, which left a deficiency on the mortgage.

On August 15, 1989, the court entered an order granting the Eckerts' motion for judgment on the pleadings against Cook. The court found that Cook was liable to the Eckerts for any deficiency resulting from the foreclosure on the mortgage owed by the Eckerts to Charter. A report of the public sale established that a deficiency of $189,845.99 remained on the mortgage after the sale, and on August 24, 1989, the court confirmed the report and entered a deficiency judgment.

The court held the hearing on the prove up of damages on August 15, 1990, and entered an order on September 14, 1990. In this order, the court again determined that Cook was liable to the Eckerts for costs, attorney fees and other expenses, including the deficiency judgment entered on August 24, 1989, against the Eckerts and in favor of Charter, for a total amount of $237,249.30 plus interest. The court also held that Stiles was not liable to Cook on the note subject to the foreclosure or for the deficiency judgment, attorney fees or other expenses. It is from this order that Cook appeals.

Because of the nature of Cook's contentions, we will discuss the issues out of the order raised and will first consider Cook's issue that the circuit court erred when it found Stiles not liable to Cook for the deficiency judgment resulting from the sale on the foreclosure of Forrest Hall. Cook argues that since the court had previously found Stiles liable to Cook in its order of July 21, 1989, the court was only to consider the amount of damages owed to Cook by Stiles at the August 15, 1990, hearing. Cook argues that the court's refusal to follow its prior order was reversible error.

A search of the law has revealed no cases absolutely on point; however, in the Historical and Practice Notes under section 2—615 of the Code of Civil Procedure it is stated:

"The motion for judgment on the pleadings, authorized by subsection (e), is similar to a motion for summary judgment (as to which see section 2—1005, *infra*), but usually comes at or shortly after the answer and reply, if any, are filed." (Ill. Ann. Stat., ch. 110, par. 2—615, Historical and Practice Notes, at 409 (Smith-Hurd 1983).)

Given the foregoing, we find that the law applicable to summary judgments is helpful in the determination of this issue.

■■ It has been held that a circuit court has the inherent power to modify or vacate an interlocutory order granting summary judgment at any time before final judgment. (*Rowe v. State Bank* (1988), 125 Ill. 2d 203, 531 N.E.2d 1358.) Thus, if a court can vacate a summary judgment before final judgment is entered, so can the court vacate a judgment on the pleadings prior to entry of the final judgment, even when the order is vacated *sua sponte,* as the court did here. Further, because the court's initial order granted judgment on the pleadings on an erroneous basis, the court had an obligation to correct itself.

The court, in granting the judgment on the pleadings in favor of Cook, determined that the judgment was justified since Stiles had not filed verified pleadings to Cook's counterclaim and, thus, Stiles' unverified answer did not constitute an answer. In that regard the court was correct, for "[w]here the complaint is verified, an unverified answer must be disregarded as an answer." (*Florsheim v. Travelers Indemnity Co.* (1979), 75 Ill. App. 3d 298, 308, 393 N.E.2d 1223, 1232.) The effect of filing an unverified answer has the same effect as if no answer had been filed at all. (*Florsheim,* 75 Ill. App. 3d at 309, 393 N.E.2d at 1232.) Where no answer is filed, all well-pleaded facts are admitted, but that is all the effect it has. (*Florsheim,* 75 Ill. App. 3d at 309, 393 N.E.2d at 1232.) However, the failure to file an answer does not admit the truth of legal conclusions alleged, does not admit that the facts alleged constitute a cause of action, and does not act to admit facts not alleged in the complaint. (*Florsheim,* 75 Ill. App. 3d at 309, 393 N.E.2d at 1232.) In Cook's complaint, he alleged that Stiles had agreed to indemnify Cook for liability incurred as a result of actions taken or not taken by Stiles or the partnership, and since it was Stiles' failure to pay the mortgage (*i.e.,* action not taken by Stiles) which incurred the deficiency judgment for which Cook was liable, Stiles was liable to Cook. We find that these assertions consti-

tuted legal conclusions and, as such, are not well-pleaded facts justifying a judgment on the pleadings.

Similarly, verified allegations do not constitute evidence except by way of admission. (*In re Marriage of Osborn* (1990), 206 Ill. App. 3d 588, 594, 564 N.E.2d 1325, 1328.) However, these admissions are limited to those of facts and not of law. (*Osborn*, 206 Ill. App. 3d at 594, 564 N.E.2d at 1328.) As this court stated in *Osborn*, "[q]uestions of contractual validity or interpretation are matters of law for the court to decide." (*Osborn*, 206 Ill. App. 3d at 594, 564 N.E.2d at 1328.) Here, Cook's allegation that Stiles had agreed to indemnify him was a matter of contractual interpretation and, thus, a question of law. Therefore, the court erred in determining in its order of July 21, 1989, that Stiles was liable to Cook in its judgment on the pleadings, as this was a matter of contractual interpretation and a question of law and could not be accepted as an admission by Cook in his counterclaim. The issue of Stiles' liability under the contractual interpretation remained for determination, and the court erred in its statement that Stiles was liable to Cook in its previous order. Because the court's holding in its earlier order was erroneous, it was obligated to vacate its ruling prior to entry of its final order, which the court did. Therefore, the court did not err when it, in essence, vacated its prior order finding Stiles liable to Cook.

We next consider whether the court's construction of the indemnity covenant in the purchase agreement in which Stiles bought out Cook's interest in the partnership, that Stiles was not liable to Cook under the indemnity clause, was erroneous. An indemnity agreement is to be construed as any other contract, and under the rules of contract construction, the intention of the parties is the paramount concern. (*Plepel v. Nied* (1982), 106 Ill. App. 3d 282, 435 N.E.2d 1169.) When construing an agreement to indemnify, the agreement must be given a fair and reasonable interpretation based upon a consideration of all the language and provisions. (*Bates v. Select Lake City Theater Operating Co.* (1979), 78 Ill. App. 3d 153, 397 N.E.2d 75.) The interpretation of an indemnity agreement also depends upon the factual setting of the case. (*Svenson v. Miller Builders, Inc.* (1979), 74 Ill. App. 3d 75, 392 N.E.2d 628.) An indemnity agreement must be set forth in clear and explicit language so that an indemnitor's obligations are manifestly determinable. (See *Burlington Northern R.R. Co. v. Pawnee Motor Service, Inc.* (1988), 171 Ill. App. 3d 1043, 525 N.E.2d 910.) Although indemnity agreements are not void, they nevertheless are not favored and must be strictly construed. *Bates*, 78 Ill. App. 3d at 155, 397 N.E.2d at 77.

The indemnity provision which Cook contends establishes Stiles' liability was included in the purchase agreement between Cook and Stiles, wherein Stiles bought out Cook's interest in two partnerships in which Stiles and Cook were partners. The pertinent paragraph involved states as follows:

> "*INDEMNIFICATION.* Stiles and H. Stiles [Stiles' wife] agree that that [*sic*] they will indemnify and hold Cook harmless with respect to any and all liability, loss, [and] expense which may be incurred by Cook as a result of any actions taken or not taken by Stiles, H. Stiles or the Partnerships after the execution of this Agreement."

It is Cook's contention that Stiles' failure to pay the mortgage and the real estate taxes on Forrest Hall was an action "not taken" by Stiles which incurred the deficiency judgment, as well as Cook's attorney fees and expenses incurred in defense of the foreclosure action, and that under the indemnity clause of the purchase agreement, Stiles was liable to Cook for the deficiency judgment and his attorney fees and related costs.

■ Using the principles of construction of contracts and indemnity agreements enumerated above, we determine, based upon the circumstances surrounding the purchase agreement and the language of the purchase agreement containing the indemnity covenant as a whole, that Stiles was not liable to Cook for the deficiency judgment on Forrest Hall. The language used in the indemnity covenant was very broad and nonspecific, and a review of the purchase agreement containing the indemnity covenant reveals that the other terms contained therein concern the rights and the withdrawal of the rights in the partnerships, *i.e.*, an accounting of the partnerships' activities, the payment due to Cook to buy out his interest in the partnerships, and so on. Nothing in these clauses clarified what the indemnitor's obligations were to be under the indemnity covenant. It is especially notable that there was no reference to the mortgage for Forrest Hall included in this purchase agreement, but there was another clause in the agreement concerning notes of indebtedness on Freeman Hall (Cook's and Stiles' other partnership) on which both Cook and Stiles were liable. In the clause involving the notes on Freeman Hall, Stiles expressly agreed to indemnify and hold Cook harmless as to liability on the two notes, in the event Stiles was unable to obtain a release of Cook's liability on the notes. Hence, given the specific reference to two notes held on Freeman Hall from which it can be inferred that both Stiles and Cook had liability, the omission of any reference to the mortgage on Forrest Hall, and the lack of specificity in the indemnifi-

cation covenant itself, it appears that the parties did not intend that Stiles or the partnership was to indemnify Cook with regard to the mortgage.

Further, an analysis of the language of the purchase agreements between Cook and the Eckerts and between Cook and Stiles, in which the title to Forrest Hall was conveyed, indicates that neither the Forrest Hall partnership nor Stiles had personal liability on the mortgage of Forrest Hall. In the purchase agreement between the Eckerts and Cook, the following pertinent provision stated:

"2. TERMS OF PURCHASE.

\* \* \*

B. The balance of FOUR HUNDRED FIFTY THOUSAND ($450,000) DOLLARS by taking the premises subject to the FIRST MORTGAGE on the premises, with FIRST FEDERAL SAVINGS AND LOAN OF SPARTA [predecessor to Charter Bank], as Mortgagee, in that approximate amount, by agreeing to assume all obligations with respect thereto and by agreeing to hold harmless SELLER [Eckerts] from any obligation with reference thereto. SELLER understands and agrees that PURCHASER [Cook] will immediately after closing transfer title to the premises to a partnership of which he is a partner, and that although the partnership will also take title subject to the mortgage, the partnership will not assume the personal obligation under the promissory under the promissory [*sic*] note."

Similarly, the purchase agreement conveying title to Forrest Hall from Cook to the partnership stated in pertinent part as follows:

"2. TERMS OF PURCHASE.

\* \* \*

B. The balance of FOUR HUNDRED AND FIFTY THOU-SAND ($450,000) DOLLARS by taking the premises subject to the FIRST MORTGAGE with FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF SPARTA as Mortgagee, in that approximate amount, provided, however that neither PUR-CHASER [the partnership] or its partners [Cook and Stiles] in such capacity are assuming the personal obligation to pay the promissory note secured by said Mortgage, an obligation which will have been assumed (at least as to the Makers thereof) by SELLER [Cook] in connection with his purchase of the property immediately preceding this closing.

\* \* \*

### 6. LEASES.

PURCHASER acknowledges the existence of certain leases on apartments located in the properties in question, of which a sample is attached as Exhibit B, and agrees that possession shall be delivered subject to such leases, and all terms and provisions thereof. All leases and damage deposits shall be given and assigned to PURCHASER. It is understood that PURCHASER shall assume all rights, obligations and duties of SELLER under the existing leases as of possession. PURCHASER agrees to indemnify and save harmless SELLER from all claims, costs, attorneys fees and damages which they might incur by reason of any claims made by lessees of existing leases on account of any matter occurring after possession."

From the foregoing provisions, it is clear that the Eckerts transferred title to Forrest Hall to Cook subject to the mortgage, and additionally, Cook expressly agreed in the purchase agreement between Cook and the Eckerts to agree to pay and to assume the mortgage on Forrest Hall. However, in the purchase agreement between Cook and Stiles, such agreement and assumption of the mortgage was not present. Generally, the law provides that when a person takes property "subject to" an indebtedness, he does not have a personal obligation to pay the indebtedness or to indemnify the grantor against the payment of the indebtedness unless he has expressly agreed to do so. (*Pollard v. Waggoner* (1988), 165 Ill. App. 3d 501, 519 N.E.2d 18.) Thus, since Stiles had no personal obligation to pay the indebtedness on the mortgage, we perceive no basis upon which to hold that Stiles was to indemnify Cook for this obligation. Further, the language in the purchase agreement between Cook and the partnership for the transfer of title to Forrest Hall to the partnership discussed indemnification for liability on the leaseholds involved with Forrest Hall. It is more logical to infer that the indemnity covenant included in the buyout purchase agreement was intended to cover the liability involved in the leases of Forrest Hall than it is to infer that the indemnity covenant concerned the mortgage upon which the partnership had no legal obligation. Therefore, the court correctly interpreted the covenant of indemnification included in the partnership buyout purchase agreement to exclude the note of indebtedness on the mortgage of Forrest Hall.

■ The last issue raised by Cook is that the court failed to give the parties a fair and impartial hearing. Cook supports his contention by asserting two statements made by the trial judge. We find that Cook has waived this issue. Supreme Court Rule 341(e)(7) requires that arguments in a brief contain a reference to the record and a cita-

tion of authorities relied upon. (134 Ill. 2d R. 341(e)(7).) In addition, not only must an argument contain citations to authority under the supreme court rules, but the authority cited must be relevant authority. (*Britt v. Federal Land Bank Association* (1987), 153 Ill. App. 3d 605, 608, 505 N.E.2d 387, 389.) Failure to cite relevant authority in support of a bare argument will not merit consideration of the issue on appeal. (*Britt*, 153 Ill. App. 3d at 608, 505 N.E.2d at 389.) The issue raised by Cook in his last argument was that he failed to receive a fair and impartial trial because of the trial court's alleged prejudicial and improper remarks, but the only authority cited by Cook, *J.R. Sinnott Carpentry, Inc. v. Phillips* (1982), 110 Ill. App. 3d 632, 443 N.E.2d 597, concerned issues regarding the manifest weight of the evidence. This is not relevant authority. Thus, Cook has not complied with the requirements of Supreme Court Rule 341(e)(7) as he has devoted two paragraphs to this issue and the sole authority cited by Cook is not relevant to the issue presented. Therefore, we decline to consider this issue.

For the foregoing reasons, the judgment of the circuit court of Jackson County is affirmed.

*Affirmed.*

HOWERTON and CHAPMAN, JJ., concur.