**JACKSON NATIONAL LIFE INSURANCE COMPANY, Plaintiff,**

v.

**GOFEN & GLOSSBERG, INC., Boulevard Bank National Association and Midwest Securities Trust Company, Defendants.**

No. 93 C 1539.

United States District Court, N.D. Illinois, Eastern Division.

Jan. 9, 1995.

---

James J. Casey, Stacey Lee Prange, Michael J. Dolesh, Keck, Mahin & Cate, Peter Robert Sonderby, Peter R. Sonderby, P.C., Chicago, IL, for Jackson Nat. Life Ins. Co.

Jay A. Erens, Claudette P. Miller, James Dennis Ossyra, Adam M. Kingsley, Hopkins & Sutter, P.C., Chicago, IL, for Gofen & Glossberg, Inc.

Thomas D. Allen, Thomas Michael Lynch, Donald de Forest Hindman, Elizabeth A. Sanders, Vernon Pellett Squires, Wildman, Harrold, Allen & Dixon, Chicago, IL, for Boulevard Bank Nat. Ass'n.

Scott E. Early, Dianne L. Hicklen, Foley & Lardner, Dean M. Jeske, Jones, Day, Reavis & Pogue, Chicago, IL, Douglas M. Hagerman, Foley & Lardner, Milwaukee, WI, for Midwest Securities Trust Co.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Jackson National Life Insurance Company ("JNL") brings this seven count amended complaint against Gofen & Glossberg ("G & G"), Boulevard Bank National Association ("Boulevard") and the Midwest Securities Trust Company ("MSTC").[1] Pres-ently before this court are numerous motions to dismiss many of the claims and cross-claims asserted by the parties.

## I. Background

JNL, a large insurance company, had since the mid–1960's engaged G & G as a financial advisor. On January 12, 1984, JNL and Boulevard entered into written Custodian Agreement whereby Boulevard, through itself or its nominee, agreed to hold certain securities on behalf of JNL. This agreement also required Boulevard to notify JNL or G & G of "calls, tenders, maturities, subscription rights, stock dividends, and defaults with respect to principle or interest." Custodian Agreement ¶ 2(e). JNL alleges that during the course of Boulevard's tenure as custodian of JNL's securities, Boulevard made a practice of notifying JNL or G & G of all written notices regarding its securities, regardless of whether such notice was required by the terms of the Custodian Agreement.

On March 3 and March 11, 1986, JNL, through G & G, made two purchases of 12% Senior Subordinated Debentures issued by MGM Grand Hotels ("12% Debentures"), at a total price of approximately $6.5 million. As with many of its other securities, JNL had Boulevard hold these debentures as custodian. Boulevard, in turn, had these debentures held by MSTC pursuant to a Participant's Agreement entered into by Boulevard and MSTC on March 24, 1981.

On or about March 21, 1986, MGM filed with the Securities and Exchange Commission a prospectus for an exchange offer ("MGM Exchange Offer") with respect to the 12% Debentures. In this prospectus MGM offered to exchange its 12% Debentures for higher yielding secured notes. The MGM Exchange Offer was intended to pacify those who would object to MGM's pending merger with Bally's Grand, Inc., by giving them a higher rate of return and a more secured position. Almost all of the 12% Debenture holders took advantage of the MGM Exchange Offer, with only JNL not participating. JNL alleges that Boulevard, MSTC, or both, had received notice of the MGM Ex-

---

1. We have previously dismissed JNL's claim for breach of fiduciary duty against Boulevard (Count IV), thereby leaving only six counts to JNL's amended complaint.

change Offer, but had failed to pass along this notice to either G & G or JNL, in contravention of the Custodian Agreement and the Participant's Agreement.

Although the merger between MGM and Bally's Grand, Inc. was initially successful, the surviving entity was unable to meet its financial obligations and filed for bankruptcy in 1990. As opposed to the secured notes, which retained much of their value, the 12% Debentures became virtually worthless. JNL contends that, had it been notified of the MGM Exchange Offer, it would have exchanged the 12% Debentures for the notes possessing significantly better terms. Because it did not receive such notice, JNL claims that it has been damaged in excess of $50,000, representing (1) the difference between the present value of the notes and the now worthless debentures, and (2) the increase in interest that would have been credited to JNL's account had the debentures been exchanged. In addition to the main claims by JNL, G & G has filed cross-claims against Boulevard, and Boulevard and MSTC have cross-claimed each other.

## II. Discussion

 We now address the motions to dismiss that have been filed by the defendants and cross-defendants. A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Johnson v. Martin,* 943 F.2d 15, 16 (7th Cir.1991). At this stage in the litigation the claimant's version of the facts are taken as true and all reasonable inferences are construed in its favor. *Bane v. Ferguson,* 890 F.2d 11, 13 (7th Cir.1989). However, unsupported conclusions of fact and conclusions of law are not sufficient to withstand a motion to dismiss. *Cushing v. City of Chicago,* 3 F.3d 1156, 1160–61 n. 5 (7th Cir.1993); *Watters v. Harris,* 656 F.2d 234, 240 (7th Cir.1980).

### A. Boulevard's Cross–Claim Against MSTC

Defendant Boulevard bases its cross-claim against MSTC on the Participant's Agree-

ment between the two parties, as well as on the common law of agency. In essence, Boulevard contends that the Participant's Agreement, along with MSTC rules and regulations incorporated into it, imposed on MSTC an "obligation to notify Boulevard of all notices it received regarding securities held by it on Boulevard's behalf." Boulevard's Cross–Claim ¶ 10. Furthermore, Boulevard alleges that because MSTC acted as its agent with regard to JNL's securities, MSTC owed Boulevard a duty to pass along relevant information related to these securities. In sum, Boulevard argues that if it is found liable to JNL, then MSTC is obligated to indemnify it.

MSTC moves to dismiss the cross-claim, arguing that the Participant's Agreement did not create an obligation on its part to notify Boulevard of the exchange offer from MGM. Rather, MSTC claims that the Participant's Agreement simply outlined the procedures that would be used if MSTC actually did try to notify Boulevard of such information. Indeed, MSTC asserts that the Participant's Agreement expressly negates any obligation on its part to convey correct information, or any information at all, concerning securities held on Boulevard's behalf.

 Ordinarily, at the motion to dismiss stage we are not required to establish the veracity of the claimant's allegations. *Bane v. Ferguson,* 890 F.2d 11, 13 (7th Cir.1989). However, since Boulevard's cross-claim sounds in contract, we need not accept its allegations as true if they conflict with the written terms of the Participant's Agreement entered into by MSTC and Boulevard on March 24, 1982. *See Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.* 927 F.2d 988, 991 (7th Cir.1991) (terms of written contract prevail over pleadings). We therefore begin our analysis with the Participant's Agreement.

 Questions of contract interpretation raised in this court are governed by state law, *Air Line Stewards & Stewardesses Ass'n Local 550 v. American Airlines, Inc.,* 763 F.2d 875, 877 (7th Cir.1985), *cert. denied,* 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778

(1986), and the parties do not dispute that Illinois law controls. "Under Illinois law, '[t]he primary object in construing a contract is to give effect to the intention of the parties.'" *Arrow Master, Inc. v. Unique Forming Ltd.,* 12 F.3d 709, 713 (7th Cir.1993) (quoting *Air Line Stewards* ). This intention is to be gleaned primarily from the language of the contract. *Omnitrus Merging Corp. v. Illinois Tool Works, Inc.,* 256 Ill.App.3d 31, 195 Ill.Dec. 701, 704, 628 N.E.2d 1165, 1168 (1993). Boulevard's contention that MSTC owed it a duty of notification appears to stem from two sections of the Participant's Agreement which explicitly incorporate MSTC's rules and regulations into the agreement. Participant's Agreement ¶¶ 1, 3. In turn, these rules and regulations describe numerous aspect of the relationship between MSTC and its clients. Boulevard first points to Article IV, Rule 4 of the MSTC rules, which states that where MSTC gives a participant notice of reorganization activity, MSTC may set a cut-off date for the exchange or liquidation of securities and may take certain actions on behalf of participants.[2] Rule 4 also states that "[MSTC] shall not be liable for its failure to provide any services with respect to any Eligible Security which is undergoing a reorganization where such failure results from an act of God, sabotage or other cause beyond the reasonable control of [MSTC]." MSTC Rules, Art. IV, Rule 4. Boulevard contends that these provisions imposed on MSTC a duty to notify it of exchange offers, and rendered any failure to notify not caused by act of God, sabotage or other cause beyond MSTC's reasonable control actionable. However, the language of Rule 4 does not support Boulevard's interpretation. Rather, the rule merely apprises participants of the procedures MSTC follows when clients wish to act on reorganization activities. Although Rule 4 presupposes that the participant has received notice of the reorganization, it does not require that MSTC give this notice. Moreover, the rule limits MSTC's liability for failing to provide

certain services because of act of God, sabotage or other causes outside its reasonable control; it does not impose liability on MSTC where the corporation fails to provide these services because of other reasons. Even if the rule did impose liability, it would not apply to the instant case since notification of reorganization activities is conspicuously absent from the list of services that MSTC promises to provide.

Boulevard next points to MSTC's Operations Handbook, also incorporated into the Participant's Agreement, which provides that "MSTC/MCC will report all activity for the following types of Reorganizations to participants by a Distribution Notice ... Acquisitions, Conversions, Distributions, Exchanges...." Operations Handbook, Subject No. 700, at 1. Additionally, in outlining its procedures for handling exchange offers, the Handbook indicates that "[t]he participant will receive notification from MSTC/MCC of an Exchange Offer and the cut-off date." Operations Handbook, Subject No. 702, at 1. The mandatory nature of this language supports Boulevard's averment that MSTC owed it a duty of notification.

However, MSTC asks us to examine other portions of the Handbook which suggest otherwise. For example, the Handbook also states that "MSTC/MCC cannot guarantee the completeness nor the correctness of the information furnished regarding Reorganizations. Participants will be responsible for maintaining their own records and notification sources, and for comparing MSTC/MCC's Reorganization Notice to those received from various external sources for full details of the Reorganization." Operations Handbook, Subject No. 700, at 2. MSTC would have us read this section as completely absolving it of any responsibility for notifying participants of exchange offers. However, this language only protects MSTC from passing on incorrect or incomplete information. It does not absolve MSTC from liability for

---

2. In pertinent part, Rule 4 provides:

After receipt of notice by [MSTC] that the issuer of any Eligible Security is undergoing a reorganization, including but not limited to exchange offers, tender offers, liquidating dividends or reverse stock splits, [MSTC] may as-

sign a cut-off date prior to the applicable record date or other applicable expiration date in order to facilitate the provision of services with respect to such Security....

MSTC Rules, Article IV, Rule 4.

claims such as Boulevard's, i.e., that MSTC failed to pass on reorganization information of which it was aware.

 MSTC next directs us to an MST System Administrative Bulletin of November 23, 1984, dealing with the monitoring of reorganizations. The Bulletin states that MSTC will monitor reorganization activities and pass this information on to participants, but it also reiterates the company's disclaimer that it will not always be able to receive information about a particular reorganization. The Bulletin goes on to state that when MSTC receives late information about a reorganization, MSTC will try to notify participants by telephone. Finally, the Bulletin ends with the following paragraph.

MSTC again reminds participants to maintain their own information services for full disclosure on reorganization activity. MSTC does not guarantee information on a reorganization of a Midwest-eligible security will be received *or passed on to participants,* nor does MSTC guarantee the correctness or completeness of the information provided.

MST System Administrative Bulletin (emphasis added). While MSTC's prior disclaimers dealt only with the transmittal of inaccurate information, this paragraph explicitly covers MSTC's failure to transmit information which it possesses. Because this Administrative Bulletin was incorporated into the Participant's Agreement between MSTC and Boulevard, Participant's Agreement ¶¶ 1, 3, its terms are binding on Boulevard. Quite apart from imposing an obligation on MSTC to provide reorganization notices to participants, this Bulletin unambiguously indicates that MSTC did not promise

to pass on all information regarding reorganizations to its participants. Nor can Boulevard claim that, despite this language, there was nonetheless an implied obligation to notify it of reorganization activities, since express terms of a contract prevail over implied terms. *See Williams v. Jader Fuel Co., Inc.,* 944 F.2d 1388, 1394 (7th Cir.1991) ("no obligation can be implied which would be inconsistent with the explicit terms of the contract"), *cert. denied,* —— U.S. ——, 112 S.Ct. 2306, 119 L.Ed.2d 228 (1992); *Sol K. Graff & Sons v. Leopold,* 92 Ill.App.3d 769, 48 Ill.Dec. 244, 247, 416 N.E.2d 275, 278 (1981). Boulevard's allegation that MSTC owed it a contractual duty of notification is not supported by the written agreement between the parties, and thus cannot be used as a basis for its cross-claim.

Boulevard also seeks to ground its cross-claim on general principles of agency law, claiming that the Participant's Agreement between the two parties created a principle-agent relationship.[3] Specifically, Boulevard relies on two principles of agency law to support its cross-claim: (1) an agent is responsible to its principle for any liability incurred because of a breach of duty, Restatement (Second) of Agency § 401 (1958), and (2) an agent has a duty to inform its principle of information which is relevant to the principle's affairs. Restatement (Second) of Agency § 381 (1958). Combined, these two principles lead Boulevard to conclude that despite the disclaimer in the Administrative Bulletin, MSTC was bound to pass along reorganization information.

 Boulevard appears to forget, however, that a principle-agent relationship is consensual in nature, and the conditions of

---

**3.** Boulevard's argument appears to be based on paragraph seven of the Participant's Agreement, which provides:

7. The undersigned [Boulevard] hereby authorizes the Corporation [MSTC], in its own capacity or as an agent and attorney in fact for the undersigned,

(a) to maintain any and all securities from time to time held by the Corporation for the account of the undersigned on deposit, subject to the instructions of the Corporation, with custodian banks or with nominees (including other clearing corporations);

(b) to cause such securities to be registered in the name of the Corporation or a custodian bank or a nominee of either, or to hold or deposit such securities indorsed in blank;

(c) to enter into such agreements with the depositors referred to in subsection (a), relating to the custody of securities deposited therewith by the Corporation and to related matters, as the Corporation may in its sole discretion approve, and

(d) to agree to comply with the rules, regulations and other requirements of such depositories, and to grant such liens as may be required pursuant thereto.

that relationship must be agreed to by the parties. Restatement (Second) of Agency § 15 (1958). While it is true that MSTC acted as Boulevard's agent with respect to certain transactions, MSTC did not agree to act as Boulevard's agent with regard to all of its activities. Rather, the Participant's Agreement and MSTC's rules and regulations delineated the scope of the principle-agent relationship. *Id.* § 34, cmt. h ("[I]t is assumed that the [document outlining the agency relationship] represents the entire understanding of the parties."). Specifically, MSTC did not agree to invariably notify Boulevard of reorganization activity regarding Boulevard's securities, and thus a duty to notify was not part of their principle-agent relationship.

Boulevard tries to impose this duty upon MSTC through the general principle that:

[u]nless otherwise agreed, an agent is subject to a duty to use reasonable efforts to give his principle information which is relevant to affairs entrusted to him and which, as the agent has notice, the principle would desire to have....

Restatement (Second) of Agency § 381 (1958). However, Boulevard's citation clearly does not apply to the instant case, since the parties "otherwise agreed" that MSTC could not guarantee that it would pass along reorganization information. Accordingly, MSTC's motion to dismiss Boulevard's crossclaim is granted.

*B. Count VII of JNL's Amended Complaint*

■ MSTC has also moved to dismiss Count VII of plaintiff JNL's complaint against it for breach of contract. MSTC raises three arguments: (1) JNL cannot sue for breach of contract because it is not an intended third-party beneficiary of the Participant's Agreement, (2) even if JNL does have rights under the Participant's Agreement, the contract did not impose any duty on MSTC to inform Boulevard of the exchange offer at issue, and (3) JNL's action is barred because it was not brought within the five year statute of limitations imposed by Illinois law, 735 ILCS 5/13–205. Because of our finding that MSTC did not have an obli-

gation to notify Boulevard of all exchange offers, and therefore could not have breached any duty owed to a third-party beneficiary, we necessarily must dismiss Count VII of JNL's complaint.

■ Additionally, Count VII is subject to dismissal because JNL is not a third-party beneficiary of the Participant's Agreement between MSTC and Boulevard. In order to bring suit as a third-party beneficiary, JNL must show that it was intended to directly benefit from the Participant's Agreement. *See Carson Pirie Scott & Co. v. Parrett,* 346 Ill. 252, 178 N.E. 498, 501 (1931). The intentions of the parties to the Participant's Agreement are to be "gleaned from a consideration of all of the contract and the circumstances surrounding the parties at the time of its execution." *Id.; Terrell v. Childers,* 836 F.Supp. 468, 473 (N.D.Ill.1993). Unless the Participant's Agreement names JNL as a beneficiary, or defines a class of beneficiaries to which JNL belongs, JNL cannot bring suit as a third-party beneficiary. *See Hunter v. Old Ben Coal Co.,* 844 F.2d 428, 432 (7th Cir.1988).

In support of its assertion that, as a customer of Boulevard, it was an intended beneficiary, JNL points to paragraph 11 of the Participant's Agreement, which provides that:

[Boulevard] while a Participant will maintain its account(s) with [MSTC] in compliance with all applicable law, all rules and regulations thereunder, and all provisions of the contracts of [Boulevard] with its customers,....

Participant's Agreement ¶ 11. However, rather than identifying a class of third-party beneficiaries, this provision merely allocates to Boulevard the responsibility of complying with any agreements it had with JNL or its other customers. At best, it shows that MSTC was aware that by using its services, Boulevard might also be benefitting a third party. Yet this general awareness alone is insufficient to demonstrate that JNL was a direct and intended beneficiary. *See Altevogt v. Brinkoetter,* 85 Ill.2d 44, 51 Ill.Dec. 674, 680, 421 N.E.2d 182, 188 (1981); *Chicago Heights Venture v. Dynamit Nobel of Amer-*

*ica, Inc.,* 575 F.Supp. 214, 219 (N.D.Ill.1983), *aff'd,* 782 F.2d 723 (7th Cir.1986).

Finally, the circumstances surrounding the execution of the Participant's Agreement belie JNL's assertion that it was an intended beneficiary. MSTC only agreed to act as a clearing house for Boulevard securities. The agreement does not indicate whether Boulevard will be acting for itself or on behalf of others. Further, the agreement contains indemnity provisions protecting MSTC from the claims of potential third-parties such as JNL. *See* Participant's Agreement ¶ 9; MSTC Rules, Art. I, Rule 3, § 2. Because neither the text of the Participant's Agreement nor the surrounding circumstances support JNL's assertion of third-party beneficiary status, and because MSTC owed no duty to notify Boulevard of capital change events, we grant MSTC's motion to dismiss Count VII of JNL's complaint.

## C. *G & G's Cross–Claim Against Boulevard*

Count I of G & G's cross-claim against Boulevard seeks indemnification for the costs of defending against JNL's claims, as well as for any judgment entered against it, based on the express terms of the Custodian Agreement between Boulevard and JNL. G & G also brings Count III against Boulevard under the common law of contribution. Boulevard moves to dismiss Counts I and III, arguing that G & G has not alleged the sorts of losses which are covered by the indemnity provision of the Custodian Agreement, and that contribution is not available for claims based on contract.

### 1. Count I (Indemnification)

 In Illinois, an indemnity provision is interpreted in the same manner as any other contractual term, that is, the intention of the parties controls. *Charter Bank v. Eckert,* 223 Ill.App.3d 918, 166 Ill.Dec. 282, 288, 585 N.E.2d 1304, 1310 (1992). This intention must be gleaned from all the terms of the agreement and the factual setting of the case. *Id.* However, indemnity provisions are not favored and are strictly construed against the indemnitee. *Id.; Fidelity & Deposit Co. of Maryland v. Rosenmutter,* 614 F.Supp. 348, 351 (N.D.Ill.1985).

 G & G bases Count I on the following provision of the Custodian Agreement between Boulevard and JNL:

> It shall be the sole responsibility of [Boulevard] and any nominee of it, for any loss, damage, or injury sustained by [JNL] or by any agent or employee [of JNL] through misfeasance, malfeasance, negligence, or nonfeasance on the part of [Boulevard] or its nominee, in connection with or with respect to the handling, transfer, delivery, or custody of all securities held under this Agreement which may be delivered or come into the possession of [Boulevard] under the provisions of this Agreement, and [Boulevard] shall indemnify and save harmless [JNL] and its agents and employees for or on account of any such loss, injury or damage. It is understood and agreed, however, that [Boulevard] will not be liable as an insurer of said securities.

Custodian Agreement ¶ 6. Boulevard first argues that the cross-claim fails to allege the breach of a duty owed to JNL or G & G, thus rendering the above cited indemnity clause irrelevant. However, Boulevard's reading of the cross-claim is too narrow. In paragraph seven of the cross-claim, G & G alleges that the Custodian Agreement obligated Boulevard "[t]o notify [JNL] or its authorized agent as to calls, tenders, maturities, subscription rights, stock dividends, and defaults with respect to principle or interest...." Custodian Agreement ¶ 2(e). G & G alleges that it did not receive notice of the MGM Exchange Offer, and claims that therefore it is entitled to indemnification from Boulevard. G & G's Cross–Claim ¶¶ 14, 20. The clear inference of G & G's cross-claim is that Boulevard failed to notify G & G of the MGM Exchange Offer as it was obligated to do, and because of this breach G & G sustained (and may continue to sustain) losses. Given that at this stage we must draw all reasonable inferences in favor of G & G, *see Dehainaut v. Pena,* 32 F.3d 1066, 1070 (7th Cir.1994), we cannot grant Boulevard's motion to dismiss.

Not willing to surrender, Boulevard next claims that any duty it had towards G & G was not breached in the instant case. Para-

graph 2(e) of the Custodian Agreement speaks of "calls, tenders, maturities, subscription rights, stock dividends, and defaults," but does not explicitly mention the term "exchange offers." This term was not unknown to the parties, since the following provision requires Boulevard to "exchange securities" when requested to do so. Custodian Agreement ¶ 2(f). Based on this language, Boulevard contends that it was not obligated to inform JNL or G & G of "exchange offers," and therefore the indemnity provision does not apply. G & G argues in response that an exchange offer is simply a type of "tender" offer which is covered by the notification provision of paragraph 2(e). Furthermore, G & G asserts that Boulevard, as a holder of securities on behalf of JNL, would receive all notices of capital change events regarding these securities. The Custodian Agreement, under G & G's interpretation, requires Boulevard to pass on all such capital change notices.

While Boulevard correctly points out that "exchange offers" is not specifically included in paragraph 2(e), we cannot agree that the MGM Exchange Offer does not, as a matter of law, fall within the ambit of the term "tenders" as it is used in the Participant's Agreement. "Tender, though usually used in connection with an offer to pay money, is properly used in connection with offer of property or performance of duty other than payment of money." Black's Law Dictionary 1467 (6th ed. 1990). Given the circumstances surrounding the Custodian Agreement, it may well have been the intention of the parties to have Boulevard forward notice of an exchange offer such as MGM's to JNL or G & G. Given this ambiguity in the Custodian Agreement, and the need for the resolution of factual issues to clarify the scope of paragraph 2(e), Boulevard's motion to dismiss Count I under Rule 12(b)(6) is denied. *See Lovellette v. Southern Ry. Co.*, 898 F.2d 1286, 1291 (7th Cir.1990) (where scope of indemnity provision is ambiguous, 12(b)(6) resolution is inappropriate).

### 2. Count III (Contribution)

■ Boulevard's argument against Count III of G & G's cross-claim is that the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100/1–100/5, does not apply to claims such as G & G's which are based on the law of agency and contract. G & G agrees with this contention, but asserts that its claim for contribution is based not on the Contribution Act, but on the contractual duties undertaken by Boulevard in the Custodian Agreement. G & G's claim, while creative, does not state a claim under Illinois law and must be dismissed.

■ The Illinois Contribution Act provides that "where 2 or more persons are subject to liability in tort arising out of the same injury to person or property ... there is a right of contribution among them, even though judgment has not been entered against any or all of them." 740 ILCS 100/2(a). Therefore, breach of a contractual duty cannot support a claim under the Contribution Act. *New England Mut. Life Ins. v. LaSalle Nat. Bank*, 697 F.Supp. 965, 968–69 (N.D.Ill.1988). G & G contends, however, that its contribution action stems from law of contract, not the law of torts.

Rather than citing cases that have recognized such a cause of action, G & G points us to *St. Paul Fire & Marine v. Great Lakes Turnings*, 774 F.Supp. 485 (N.D.Ill.1991). The court in *Great Lakes* denied a motion to dismiss a claim of implied indemnity, finding that the parties were not "subject to liability in tort" for the plaintiff's injuries and, therefore, the Contribution Act did not apply. *Id.* at 488. While this holding may support an implied indemnification claim, it provides no guidance as to the vitality of a contribution claim based on contract.

■ Despite G & G's characterization of its contribution claim as one in contract, "[c]ontribution is grounded in tort." *Garcia v. Edgewater Hosp.*, 244 Ill.App.3d 894, 184 Ill.Dec. 651, 657, 613 N.E.2d 1243, 1249, *app. denied*, 152 Ill.2d 558, 190 Ill.Dec. 887, 622 N.E.2d 1204 (1993). A claim of contribution does not arise out of an agreement between the parties as to the allocation of liability, but stems from equitable principles. *Insurance Co. of Illinois v. Safeway Ins. Co.*, 233 Ill. App.3d 1021, 175 Ill.Dec. 420, 421, 600 N.E.2d 43, 44 (1992). The only duty which Boulevard is alleged to have breached is a

contractual one, thereby making a claim of contribution inapplicable. *Cf. Hennepin Drainage & Levee Dist. v. W.H. Klingner,* 187 Ill.App.3d 710, 135 Ill.Dec. 399, 401, 543 N.E.2d 967, 969 (where plaintiff may only state a claim in contract, third-party complaint for contribution is precluded), *app. denied,* 128 Ill.2d 663, 139 Ill.Dec. 513, 548 N.E.2d 1069 (1989). G & G's proper remedy, which it seeks in Count I, is for breach of contract. *See Cosey v. Metro–East Sanitary Dist.,* 221 Ill.App.3d 205, 163 Ill.Dec. 760, 764, 581 N.E.2d 914, 918 (1991) (dismissing contribution claim but granting leave to file claims based on breach of contract). Accordingly, Boulevard's motion to dismiss Count III of G & G's cross-claim is granted.

### D. Count II of JNL's Complaint

JNL alleges in Count II of its complaint that on numerous occasions both before and after March 1986, G & G sent letters to Boulevard notifying it of capital change events affecting JNL's securities. Furthermore, JNL alleges that G & G sent copies of these notice letters to it as well.[4] JNL claims that it relied to its detriment on G & G's past practice of sending out notice letters, and that it would have sought out additional notification services had G & G not undertaken this practice. Therefore, JNL claims that it is entitled to recover damages to the extent it relied on G & G's past conduct under the doctrine of promissory estoppel. G & G has moved to dismiss this count, arguing that JNL has failed to state a claim upon which relief can be granted.

■ We have already in this case visited the issue of what constitutes a claim for promissory estoppel under Illinois law. *See Jackson National Life Ins. Co. v. Gofen & Glossberg, Inc.,* No. 93 C 1539, 1993 WL 266548 (N.D.Ill. July 15, 1993) (*"Jackson I"*). To state a claim for promissory estoppel, JNL must allege that (1) G & G made an unambiguous promise to it, (2) JNL relied on that promise, (3) this reliance was expected

and foreseeable by G & G, and (4) JNL relied to its detriment. *See M.T. Bonk Co. v. Milton Bradley Co.,* 945 F.2d 1404, 1408 (7th Cir.1991); *Quake Construction, Inc. v. American Airlines, Inc.,* 141 Ill.2d 281, 152 Ill.Dec. 308, 322, 565 N.E.2d 990, 1004 (1990). G & G asserts that JNL has failed to satisfy either of the first two elements of a claim for promissory estoppel, and thus Count II of its complaint must be dismissed. We address these arguments in turn.

■ Although a promise must be unambiguous in order for it underlie a claim of promissory estoppel, it need not be express. *Coca–Cola Co. Foods Div. v. Olmarc Packaging Co.,* 620 F.Supp. 966, 972 (N.D.Ill.1985). "Rather, the promise may be inferred from conduct and words." *First Nat. Bank of Cicero v. Sylvester,* 196 Ill.App.3d 902, 144 Ill.Dec. 24, 31, 554 N.E.2d 1063, 1070, *app. denied,* 133 Ill.2d 555, 149 Ill.Dec. 320, 561 N.E.2d 690 (1990). G & G contends that JNL has not alleged an unambiguous promise, since Count II merely states that G & G sent copies of notification letters to JNL "on numerous occasions." As distinguished from the allegation in Count V—that is, that Boulevard agreed to provide JNL or G & G with "all notices or information regarding capital changes"—G & G claims that Count II merely alleges that G & G gratuitously passed on some notices to JNL.

■ However, G & G's miserly reading of Count II does not comport with the reasonable inferences it supports. *See Bane v. Ferguson,* 890 F.2d 11, 13 (7th Cir.1989) (all reasonable inferences construed in favor of plaintiff on motion to dismiss). The allegation that G & G sent notices to JNL on numerous occasions does not negate the possibility that such notices were sent with regard to all capital change events; indeed, the two assertions are consistent. Count II supports a reasonable inference that G & G engaged in a practice of giving written notice to JNL of all capital change events involving

---

4. As JNL points out in its sur-reply to the instant motion, the last sentence in paragraph 33 of its amended complaint contains a typographical error, since it reads "JNL sent copies of the letters it sent to Boulevard to JNL." The corrected

its securities,[5] and such an allegation would be sufficient to withstand a motion to dismiss. *See Jackson I,* 1993 WL 266548, at *3.

G & G also contends that JNL has failed to adequately allege any detrimental reliance on G & G's past conduct. We have previously observed in this case that so long as " 'the promisor's representation induces some action or forbearance on the part of the promisee that would not have otherwise occurred, the reliance element is satisfied.' " *Id.* (quoting *Lamaster v. Chicago & N.E. Ill. Dist. Council of Carpenters,* 766 F.Supp. 1497, 1506 (N.D.Ill.1991)). G & G argues that JNL hired Boulevard to provide it with notification services, and thus it could not have relied on G & G' past conduct for notification. However, as with JNL's claim against Boulevard, Count II can be fairly read to imply that had G & G not provided JNL or Boulevard with notice in the past, JNL would have sought out such information from other sources in addition to Boulevard.[6] Under the liberal pleading requirements of the federal rules, Count II's inference of forbearance is sufficient to satisfy the second element of a claim for promissory estoppel.[7] Accordingly, G & G's motion to dismiss Count II of JNL's complaint is denied.

### E. MSTC's Cross–Claim Against Boulevard

MSTC grounds its cross-claim against Boulevard on two theories. First, MSTC claims that the Participant's Agreement between it and Boulevard obligates Boulevard to indemnify MSTC for any losses it sustains by virtue of third-party claims. Second, MSTC argues that its rules, which are incorporated into the Participant's Agreement, also obligate Boulevard to reimburse it for losses and expenses (including attorney's fees) incurred because of third-party claims. Boulevard moved to dismiss the cross-claim, arguing that the contractual provisions at issue did not support MSTC's claim of indemnity and that MSTC failed to allege which of its rules provided the basis for its claim of indemnity. MSTC opposed this motion, but has subsequently amended its crossclaim in an attempt to moot out Boulevard's second objection. However, Boulevard has now moved for a more definite statement of the cross-claim, asserting that the rules cited by MSTC were published in 1992 and therefore did not impose on it a duty to indemnify for an event which allegedly occurred in 1986.

#### 1. Contractual Indemnity

As previously addressed in our discussion of G & G's cross-claims against Boulevard, indemnity provisions in Illinois are interpreted according to the intention of parties. *Charter Bank v. Eckert,* 223 Ill.App.3d 918, 166 Ill.Dec. 282, 288, 585 N.E.2d 1304, 1310 (1992). To determine what the parties intended an indemnity provision to mean, we examine all the terms of the agreement and the factual setting of the case. *Id.*

Paragraph 9 of the Participant's Agreement provides the basis for MSTC's contractual claim of indemnity against Boulevard. This provision states:

> The undersigned [Boulevard] hereby agrees to indemnify the Corporation [MSTC] and any nominee in the name of which securities credited to the account of the undersigned by the Corporation are registered against any and all loss, liability or expense sustained, without fault on the part of the Corporation of such nominee,

---

allegation is "G & G sent copies of the letters it sent to Boulevard to JNL."

**5.** Obviously, if JNL can only prove that sometimes G & G provided it with notice and sometimes it did not, this will not support a claim for promissory estoppel with regard to MGM's Exchange Offer. Indeed, if the terms of G & G promise were "sometimes we will give notice, and sometimes we will not," then G & G's alleged conduct in this case was consistent with that promise.

**6.** The fact that JNL makes the same claim with regard to Boulevard's actions does not render Count II defective, since even if JNL could have relied on only one of the defendants' prior actions—an issue on which we express no opinion—alternative theories of liability may be pled in a single complaint. Fed.R.Civ.P. 8(e)(2).

**7.** Additionally, we note that the extent of JNL's reliance on G & G past actions, if any, is an issue for the trier of fact. *First Nat. Bank of Cicero v. Sylvester,* 196 Ill.App.3d 902, 144 Ill.Dec. 24, 31, 554 N.E.2d 1063, 1070 (1990).

by reason of the registration of securities credited to the account of the undersigned in the name of any such nominee, including (i) assessments, (ii) losses, liabilities and expenses arising from claims of third parties and from taxes or other governmental charges, and (iii) related expenses in respect of any such securities.

Participant's Agreement, ¶ 9. Boulevard contends that this provision does not apply since MSTC is being sued by JNL for its own failure to provide notice of the MGM Exchange Offer, and therefore any liability MSTC incurs will stem from its own fault and will not be covered by paragraph 9. However, it is obvious that MSTC may well incur "losses, liabilities and expenses arising from the claims of third parties" without having been found at fault. Indeed, given our resolution of MSTC's motions to dismiss Count VII of JNL's complaint and Boulevard's cross-claim, MSTC will not be adjudged at fault in this litigation unless additional claims are asserted against it. Moreover, given that the language of the Participant's Agreement contemplates the sustaining of "loss, liability or expense ... without fault," even if MSTC were held "liable" we are not convinced that this would preclude a finding that it was "without fault" as this term is used in paragraph 9. Consequently, we cannot say as a matter of law that MSTC can prove no set of facts entitling it to relief on the contractual indemnity provision.[8]

### 2. MSTC Rule Indemnity

In its motion to dismiss, Boulevard maintained that MSTC's cross-claim failed to adequately identify the rule or rules which ostensibly imposed on it a duty to indemnity MSTC. In response, MSTC directed us to two portions of its rules which it claimed were universal indemnity provisions. Additionally, MSTC filed an amended cross-claim in order to reflect the fact that it was basing

its claim on those two rules. Instead of renewing its motion to dismiss this portion of the cross-claim, Boulevard filed a motion for a more definite statement, contending that MSTC had failed to provide it with a full text copy of the rules and had not alleged that the rules were in effect in 1986 when the MGM Exchange Offer was made. Because Boulevard has not renewed its motion to dismiss, we will not decide whether the second portion of MSTC's cross-claim could withstand scrutiny under Rule 12(b)(6). Rather, we simply decide whether MSTC's claim is sufficiently clear to survive Boulevard's motion for a more definite statement.

Where a claim "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading," a court may order that the pleading be amended to more clearly state the claim for relief. Fed.R.Civ.P. 12(e). In a contract dispute, a more definite statement is required when "defendants can only guess to what conduct and contract(s) [an] allegation refers." *Khalid Bin Talal, Etc. v. E.F. Hutton & Co.,* 720 F.Supp. 671, 686 (N.D.Ill.1989). However, unless the claim is one that must be pleaded with particularity pursuant to Rule 9(b), a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a).

MSTC contends in its amended cross-claim that two of its rules provide a legal basis for its claim of indemnity. First, MSTC cites Article I, Rule 3, Section 2 of Midwest Securities Trust Company Rules. MSTC attaches to its response brief a copy of the pertinent rule, but also includes in its cross-claim additional language that it contends is actually part of the rule. Combining these two quotations, the rule appears to read as follows:

---

8. Boulevard also challenges the application of the indemnity provision by asserting that even if MSTC was without fault, JNL's losses did not arise "by reason of the registration of securities credited to the account of [Boulevard]." Neither Boulevard nor MSTC has seen fit to provide us with a thorough analysis of what this portion of the indemnity agreement means, or whether it covers the losses at issues in this case. Rather,

the parties make conclusory assertions as to the applicability of paragraph 9. Given the broad nature of the indemnity provision and the dearth of discussion on the matter by the parties, we cannot say that the losses at issue were not caused "by reason of the registration of securities credited to the account of [Boulevard]," and so we decline to dismiss MSTC's cross-claim.

Participants shall indemnify and hold harmless the Corporation [MSTC] against any loss, liability or expense sustained, including (i) assessments, (ii) losses, liabilities and expenses arising from claims of third parties and from taxes or other government charges, (iii) related expenses in respect to any Security, and (iv) losses, liabilities and expenses arising from the Corporations's reliance on or by reason of the breach of any warranty provided by the Participant to the Corporation at the time a Security is delivered or deposited to the Corporation...., provided, however, Participants shall not be liable for any such losses, costs, expenses, damages and liabilities that may arise by reason of the grossly negligent, fraudulent or criminal acts of the Corporation or its respective officers, employees or agents.

Second, MSTC cites Article VII, Rule 2, Section 2 for support of its cross-claim:

A Participant may be charged for any unusual expenses caused directly or indirectly by such Participant, including, but without limitation, the cost of producing records pursuant to court order or other legal process in any litigation or other legal proceeding, whether or not such Participant is a party to such litigation or proceeding.

MSTC claims that based on these two rules, Boulevard owes a duty to indemnify it for all losses, liabilities and expenses incurred in defending against claims in this litigation.

 Boulevard argues that the rules quoted by MSTC were published in 1992, and thus cannot provide the basis for a claim of indemnity arising in 1986. Moreover, MSTC does not allege that the rules it quotes were in force in 1986. While we agree with Boulevard as to the absence of these crucial allegation, we do not believe that the pleading is so vague as to force Boulevard to guess what rules it is alleged to have broken. If these indemnity provisions were not part of the Participant's Agreement in 1986, then Boulevard can challenge this claim on a motion to dismiss or for summary judgment. At this stage, however, MSTC's claims are sufficiently clear for Boulevard to file a responsive pleading, and therefore its motion for a more definite statement must be denied.

 Finally, Boulevard challenges MSTC's claim for attorney's fees, arguing that reimbursement for such losses is not generally allowed and that MSTC rules do not explicitly provide for it. Boulevard is correct when it asserts that attorney's fees are generally not recoverable unless provided for in a written indemnity agreement. *MXL Indus., Inc. v. Mulder,* 252 Ill.App.3d 18, 191 Ill.Dec. 124, 134, 623 N.E.2d 369, 379 (1993); *Montgomery Ward & Co., Inc. v. Wetzel,* 98 Ill.App.3d 243, 53 Ill.Dec. 366, 372, 423 N.E.2d 1170, 1176 (1981). Although the indemnity provisions quoted by MSTC are broadly worded, they do not explicitly mention the phrase "attorney's fees." However, the Illinois courts have not required that this exact phrase be used in the indemnity agreement; rather, the provision at issue need only indicate the intention of the parties to provide for the recovery of such fees. *Compare Meeker v. Fowler,* 35 Ill.App.3d 313, 341 N.E.2d 412 (1976) ("collection charges" interpreted to include attorney's fees), *with Singleton v. County of Cook,* 53 Ill.App.3d 994, 11 Ill.Dec. 773, 369 N.E.2d 227 (1977) ("expenses" did not include attorney's fees); *see also Boulevard Bank National Ass'n v. Philips Medical Systems Int'l,* 827 F.Supp. 510, 512 (N.D.Ill.1993) ("collection costs" intended by parties to include attorney's fees), *aff'd,* 15 F.3d 1419 (7th Cir.1994).

 The indemnity provisions at issue here cover "any loss, liability or expense," and all "unusual expenses" incurred because of litigation. MSTC Rules, Art. I, Rule 3, § 2; Art. VII, Rule 2, § 2. MSTC argues that the broad language used in these rules indicates that the parties intended to have attorney's fees included in the calculations. Given the breadth· of these provisions, we cannot say as a matter of law that MSTC is not entitled to attorney's fees based on its rules. Accordingly, Boulevard's motion to dismiss MSTC's request for attorney's fees is denied.

### III. Conclusion

Boulevard's cross-claim against MSTC, and Count VII of JNL's complaint against

MSTC are dismissed for failure to state a claim upon which relief can be granted. With regard to G & G's cross-claims, Boulevard's motion to dismiss Count I is denied and its motion to dismiss Count III is granted. G & G's motion to dismiss Count II of JNL's complaint is denied. Boulevard's motion to dismiss MSTC's cross-claim, as well as its motion for a more definite statement, are denied. It is so ordered.